## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

LUCAS WALL,

                     Plaintiff,

v.                                                          Case No: 6:21-cv-975-PGB-DCI

CENTERS FOR DISEASE CONTROL
& PREVENTION et al.,

                     Defendants.

_____

## REPORT AND RECOMMENDATION

This matter is before the undersigned upon referral of the following motions for consideration and issuance of a report and recommendation:

- Motion to Dismiss Count 17 by Defendant Greater Orlando Aviation Authority (GOAA) (Doc. 49);

- Motion to Dismiss Count 18 by Defendant Central Florida Regional Transportation Authority (LYNX) (Doc. 82);

- Motion for Summary Judgment Against All Federal Defendants on Counts 1-2, 4-6, 9-10, 12, 19-20, & 22-23 by Plaintiff (Doc. 83); and

- Motion to Dismiss and Cross Motion for Summary Judgment by Defendants Centers for Disease Control and Prevention (CDC), Department of Health and Human Services (HHS), Transportation Security Administration (TSA), Department of Homeland Security (DHS), Department of Transportation (DOT), and Joseph R. Biden, Jr., in his official capacity as President of the United States of America (collectively, the Federal Defendants) (Doc. 125).

It is respectfully recommended that the Complaint be dismissed without prejudice (and with leave to re-plead), except that: (1) the claims against DHS, TSA, and DOT be dismissed without leave to replead in this Court (i.e., a district court); and (2) the claims against the President of the United States, GOAA, and LYNX be dismissed with prejudice.  If the Complaint is dismissed, the motions for summary judgment should be denied as moot.

I.     **Introduction**

On June 7, 2021, Plaintiff brought the 206-page Complaint, which contains 23 different counts.  Doc. 1.[1]  After 182 pages and 960 paragraphs of text, the counts begin.  Count 1 begins with the following statement:

> For this and all other causes of action, I reallege and incorporate by reference the allegations and facts contained in all of the preceding paragraphs as though set forth fully herein.

Doc. 1 at 182.  In the counts (using their headings as a summary of the claims and bolding to identify the affected defendants), Plaintiff alleges the following:

1. Violation of the Administrative Procedure Act [APA] against Defendants **CDC & HHS**: CDC failed to observe the notice and comment procedure required by law before ordering the Federal Transportation Mask Mandate [FTMM].

2. Violation of the [APA] against Defendants **CDC & HHS**: The FTMM does not comply with the Regulatory Flexibility Act.

3. Violation of the [APA] against Defendants **CDC & HHS**: arbitrary and capricious agency action in ordering the FTMM.

4. Violation of the [APA] against Defendants **CDC & HHS**: The FTMM exceeds CDC's statutory authority under the Public Health Service Act.

5. Violation of the separation of powers against all **Federal Defendants**: The FTMM is an improper delegation of legislative power.

6. Violation of the 10th Amendment against all **Federal Defendants**: The FTMM applies to intra-state transportation in direct conflict with the mask policies of 46 states.

7. Violation of the Fifth Amendment against all **Federal Defendants**: deprivation of due process by assigning FTMM enforcement and exemption powers to private companies as well as state, regional, and local agencies with no ability to appeal to a federal decisionmaker.

8. Violation of the constitutional right to freedom of travel against all **Federal Defendants**: The FTMM blocks Americans who can't or won't wear a face mask from traveling.

---

[1] In violation of Local Rule 1.08(a), the 206-page Complaint appears to be in an 11-point font—had it been in a compliant font and text size it would certainly be longer.

9. Violation of the [APA] against Defendants **TSA & DHS**: TSA failed to observe the notice and comment procedure required by law before ordering security directives and an emergency amendment to enforce the [FTMM].

10. Violation of the [APA] against Defendants **TSA & DHS**: The FTMM's security directives and emergency amendment do not comply with the Regulatory Flexibility Act.

11. Violation of the [APA] against Defendants **TSA & DHS**: arbitrary and capricious agency action in ordering the FTMM's security directives and emergency amendment.

12. Violation of the [APA] against Defendants **TSA & DHS**: The FTMM's security directives and emergency amendment exceed TSA's statutory authority to ensure transportation security.

13. Violation of the separation of powers against Defendant **DOT**: The Federal Transit Administration's withholding of funds from state, regional, and local authorities that fail to enforce the FTMM is an impermissible breach of Congress' constitutional power of the purse.

14. Violation of the Air Carrier Access Act against all **Federal Defendants**: The FTMM does not comply with Defendant DOT's regulations concerning how to treat passengers with a known communicable disease.

15. Failure to enforce the Air Carrier Access Act against Defendant **DOT**: DOT has allowed airlines to prohibit all passengers with disabilities who can't wear face masks from flying and/or impose numerous onerous requirements to obtain an exemption that violate the ACAA and its accompanying regulations.

16. Violation of the [APA] against Defendant **DOT**: arbitrary and capricious agency action by the Federal Railroad Administration and the Federal Motor Carrier Safety Administration in ordering enforcement of the FTMM.

17. Violation of Florida law against Defendant [**GOAA**]: Requiring passengers and employees to wear face coverings in defiance of Executive Order 21-102.

18. Violation of Florida law against Defendant [**LYNX**]: Requiring passengers and employees to wear face coverings in defiance of Executive Order 21-102.

19. Violation of [APA] against Defendants **CDC & HHS**: CDC failed to observe the notice and comment procedure required by law before ordering the International Traveler Testing Requirement [(ITTR)].

20. Violation of [APA] against Defendants **CDC & HHS**: The ITTR does not comply with the Regulatory Flexibility Act.

21. Violation of [APA] against Defendants **CDC & HHS**: arbitrary and capricious agency action in ordering the ITTR.

22. Violation of Administrative Procedure Act against Defendants **CDC & HHS**: The ITTR exceeds CDC's statutory authority under the Public Health Service Act.

23. Violation of the separation of powers against all Defendants **Biden, CDC, & HHS**: The ITTR is an improper delegation of legislative power.

Doc. 1 at 182-202 (emphasis added).

Underlying these broad claims is a simple incident.  On June 2, 2021, Plaintiff allegedly attempted to board a flight at the Orlando International Airport and TSA officers did not permit Plaintiff to pass through the security checkpoint at the airport because Plaintiff refused to wear a mask.

According to Plaintiff, he purchased his airline ticket from Southwest Airlines on May 31, 2021, and "immediately" after booking that flight he completed Southwest's "Passenger Application for Exemption to Federal Mask Requirement."  Doc. 1 at 7.  Instead of submitting a medical basis for exemption, it appears that Plaintiff wrote on the form, in sum, that the requirement to obtain an exemption in the manner requested by Southwest was illegal.  *Id*. at 7-8.  Plaintiff received an automated response that consideration of his request "may" take up to 30 days.  *Id*. at 8.  Two days later, and without a mask exemption or a decision on his exemption request, Plaintiff went to the airport and, predictably, TSA refused to let him through the security checkpoint due to the FTMM.  Plaintiff apparently videoed the incident and posted the video online.  Five days later, Plaintiff, proceeding *pro se*, filed the Complaint.[2]

Plaintiff initially sought a temporary restraining order, and the Court denied that request.  Plaintiff then sought preliminary injunctive relief, but ultimately abandoned that relief.  Plaintiff has also sought injunctive relief from the Eleventh Circuit Court of Appeals and the United States Supreme Court, but those courts denied relief as well.

---

[2] Plaintiff alleges that, at about the same time, he purchased five other airline tickets, including one international ticket to Germany.  *See* Doc. 1 at 6-7.

In the meantime, GOAA and LYNX moved to dismiss the single counts naming them, Counts 17 and 18, respectively.  Then, Plaintiff moved for summary judgment against the Federal Defendants, but only as to Counts 1-2, 4-6, 9-10, 12, 19-20, & 22-23.  After that, the Federal Defendants moved to dismiss the Complaint in whole for a violation of Federal Rule of Civil Procedure 8 as well as in relation to specific counts and defendants.  The Federal Defendants also filed a cross-motion for summary judgment, which was consolidated with their motion to dismiss. All these motions are referred to the undersigned for consideration and are ripe for review.

## II.   <u>Discussion</u>

### A.   <u>The Complaint Violates Fed. R. Civ. P. 8 and 10</u>

The Complaint is due to be dismissed as a shotgun pleading.  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Further, "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  The Court will not "rewrite an otherwise deficient pleading in order to sustain an action."  *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1169 (11th Cir. 2014) (citation omitted).

"A complaint that fails to comply with Rules 8 and 10 may be classified as a shotgun pleading."  *Luft v. Citigroup Global Markets Realty Corp.*, 620 F. App'x 702, 704 (11th Cir. 2015) (internal quotation omitted).  There are four basic categories of shotgun pleadings: 1) those in which "each count adopts the allegations of all preceding counts;" 2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" 3) those that do not separate each cause of action or

claim for relief into a different count; and 4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. A court faced with a shotgun pleading has the inherent authority to *sua sponte* demand repleader of such complaints. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006) ("Given the district court's proper conclusions that the complaint was a shotgun pleading and that plaintiffs' failed to connect their causes of action to the facts alleged, the proper remedy was to order repleading *sua sponte*.").

A court in this district has explained further the district court's obligation when faced with such a pleading:

> The "most common type" of shotgun pleading "is a complaint containing multiple counts where each count adopts the allegation of all preceding counts." *Weiland*, 792 F.3d at 1321. Shotgun pleadings also may "begin with a long list of general allegations" that are "incorporated by reference into each count of the complaint." *See Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) (noting the "all-too-typical shotgun pleading" where the first paragraph of each count "incorporates by reference" all of the factual allegations).

> The U.S. Court of Appeals for the Eleventh Circuit warns that actions founded on shotgun pleadings should not be permitted because "issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. College*, 77 F.3d 364, 367 (11th Cir. 1996); *see also Chapman AI Trans.*, 229 F.3d 1012, 1027 (11th Cir. 2000) ("We have frequently railed about the evils of shotgun pleadings and urged district courts to take a firm hand...."). Heeding this warning, when confronted with a shotgun complaint, district courts must require the party to replead. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127–28 (11th Cir. 2014) (criticizing district court for failing to police shotgun pleadings); *Starship Enters. of Atlanta, Inc. v. Coweta Cty. Ga.*, 708 F.3d 1243, 1250 n.7 (11th Cir. 2013) (explaining that shotgun pleadings may constitute "an abusive tactic" of litigation).

*Kendall v. Boston Sci. Corp.*, No. 6:17-cv-1888-ORL-37GJK, 2017 WL 6042020, at *1 (M.D. Fla.

Dec. 6, 2017).

Here, Plaintiff's Complaint spans 206-pages. After 182 pages and 960 paragraphs of text,

Count 1 appears and begins with the following statement:

> For this and ***all other causes of action***, I reallege and incorporate by reference the
> allegations and facts contained in all of the preceding paragraphs as though set forth
> fully herein.

Doc. 1 at 182 (emphasis added). This is problematic for several reasons; the Complaint contains

a few different elements of a shotgun pleading. It appears that Plaintiff is attempting to incorporate

all 960 paragraphs of text into each of the 23 counts. But the sheer length of the Complaint means

that it is almost impossible to determine—or even speculate as to—which of the 960 paragraphs

apply to which of the 23 counts. Though this is a *pro se* pleading, it is not the Court's responsibility

to cobble together portions of the Complaint to create a comprehensible pleading.

On the other hand, if the Court takes a literal approach—that Plaintiff intends that all 960

paragraphs of text to apply to each count—then the Court cannot avoid the conclusion that the

Complaint is replete with conclusory, vague, and immaterial facts not obviously connected to each

cause of action in which they pled. And Plaintiff must intend that some of the preceding 960

paragraphs contain allegations essential to particular counts, as a closer inspection of the counts

reveals that many of them simply lack factual allegations sufficient for them to stand on their own

and, for example, fail to specify which defendant allegedly took which complained of action. Take

Count 8, for example. It contains no factual allegation concerning a particular action by a

particular defendant, and instead purports to be a claim against "all Federal Defendants." Doc. 1

at 189. Count 14 is similarly flawed, as are others. Even some counts naming a single defendant—

like Count 13 against DOT—fail to specify any particular "violation" by that defendant.  *Id*. at 193-94.

Given the sheer length of the Complaint and breadth of the allegations and requested relief, it should be no surprise that the Complaint blends several characters of a shotgun pleading into one lengthy document.  Regardless of what its coined, it is, as the Federal Defendants argue, a pleading that fails to comply with Rules 8 and 10.  Plaintiff's arguments to the contrary are unpersuasive.  In fact, Plaintiff never actually asserts that his Complaint is compliant with the applicable Federal Rules, just that Defendants understand his Complaint and their argument is "bogus."  Doc. 130 at 43-44.  This may not be a concession, but it is indicative of the problem. The Complaint is the antithesis of a "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  As such, the undersigned recommends that it be dismissed with leave to re-plead, subject to the limitations to be discussed in the following paragraphs.

**B.  Certain of the Federal Defendants Should be Dismissed from this Case**

The claims against DHS, TSA, and DOT should be dismissed without leave to re-plead in district court, and the claims against the President of the United States should be dismissed with prejudice.

**1.  <u>Claims Against DHS and TSA (Counts 9-12)</u>**

In Counts 9-12, Plaintiff purports to assert claims against TSA and DHS in relation to their issuance of security directives to enforce the FTMM.

The Federal Defendants argue that all of Plaintiff's claims challenging TSA security directives (i.e., Counts 9-12) should be dismissed because 49 U.S.C. § 46110 vests exclusive

jurisdiction over those claims in the courts of appeals.  Doc. 125 at 32-34.  That statute reads in

relevant part as follows:

> [A] person disclosing a substantial interest in an order issued by the Secretary of
> Transportation (or Administrator of the Transportation Security Administration
> with respect to security duties and powers designated to be carried out by the
> Administrator of the Transportation Security Administration . . . ) in whole or in
> part under [part A], part B, or subsection (l) or [(s)] of section 114 may apply for
> review of the order by filing a petition for review in the United States Court of
> Appeals for the District of Columbia Circuit or the court of appeals of the United
> States for the circuit in which the person resides. . . .

49 U.S.C. § 46110(a).  The statute further provides that the courts of appeals have "exclusive

jurisdiction to affirm, amend, modify or set aside any part of [such an] order."  *Id*. § 46110(c).  The

Federal Defendants go on to explain that the TSA Security Directives (and Emergency

Amendment) challenged here are all orders that fall within § 46110's exclusive jurisdictional

channel to the courts of appeals because each order was issued pursuant to TSA's authority under

Part A ("Air Commerce and Safety") of Title 49 and Section 114(l).  Doc. 125 at 33.  Citing as

support opinions from the Eleventh Circuit and other courts, the Federal Defendants state that the

Court lacks jurisdiction over Counts 9-12 and, as such, those Counts must be dismissed.  Doc. 125

at 33-34 (citing *Green v. Brantley*, 981 F.2d 514, 519 (11th Cir. 1993) (finding that district court

lacked jurisdiction to review challenge to FAA order); *Corbett v. United States*, 458 F. App'x 866,

870 (11th Cir. 2012) (finding that district court lacked jurisdiction to review TSA security

screening procedure); *Gilmore v. Gonzales*, 435 F.3d 1125, 1133 (9th Cir. 2006) (finding that

district court lacked jurisdiction to review TSA Security Directive requiring passengers to present

identification); *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001) ("Section 46110(c)

precludes federal district courts from affirming, amending, modifying, or setting aside any part of

such an order."); *Amerijet Int'l v. DHS*, 43 F. Supp. 3d 4, 13-14 (D.D.C. 2014) (finding that TSA

Security Directive is an "order" within the meaning of section 46110); *Durso v. Napolitano*, 795

F. Supp. 2d 63, 69 (D.D.C. 2011) (finding that the court lacked jurisdiction over claim challenging TSA screening order).

In response, Plaintiff asserts that the Court can adjudicate the claims against TSA because, in sum, the FTMM and ITTR are not "orders" and, thus, fall outside the purview of § 46110.  Doc. 130 at 26-28.[3]  Further, Plaintiff asserts that judicial economy necessitates that the Court accept jurisdiction of these claims and that to do otherwise would produce "absurd results."  *Id*. at 27. Plaintiff cites absolutely no legal authority for his contentions.

The undersigned agrees with the Federal Defendants.  Counts 9-12 challenge actions by TSA that the Federal Defendants assert—without contradiction—were issued pursuant to TSA's authority under Part A ("Air Commerce and Safety") of Title 49 and Section 114(l).  And the undersigned does not find dispositive the fact that the challenged action is not called an "order." *See Gilmore v. Gonzales*, 435 F.3d 1125, 1133 (9th Cir. 2006) (finding that district court lacked jurisdiction to review TSA Security Directive requiring passengers to present identification); *Amerijet Int'l v. DHS*, 43 F. Supp. 3d 4, 13-14 (D.D.C. 2014) (finding that TSA Security Directive is an "order" within the meaning of § 46110).  Nor is the undersigned persuaded that concepts of judicial economy or the avoidance of a particular result should control if the claims against TSA or DHS fall within the purview of § 46110.

Accordingly, the undersigned respectfully recommends that the Court lacks subject matter jurisdiction to adjudicate Counts 9-12, and those Counts should be dismissed.

---

[3] It appears that Plaintiff's argument in response goes only to Counts 9, 11, and 12, and, thus, Plaintiff has made no argument against dismissal of Count 10 on this basis.

2.  **Claims Against DOT (Count 15)**

In Count 15, Plaintiff purports to assert a claim that DOT failed to enforce the Air Carrier

Access Act (ACAA) and its accompanying regulations because DOT allegedly allowed airlines to

prohibit all passengers with disabilities who cannot wear face masks from flying and to impose

numerous onerous requirements to obtain an exemption.

The Federal Defendants argue that the Court should dismiss Count 15 because the Court

lacks jurisdiction to consider that "claim for at least two reasons: (1) the courts of appeals have

exclusive jurisdiction to consider any claim regarding DOT's actions under the ACAA, and (2)

Plaintiff cannot satisfy the stringent requirements for mandamus jurisdiction." Doc. 125 at 34-40.

As to the first argument, and as with the claims against TSA, the Federal Defendants assert

that because "the ACAA falls within Part A ('Air Commerce and Safety') of Title 49, the courts

of appeals have 'exclusive jurisdiction to affirm, amend, modify or set aside any part' of any

enforcement order issued under the ACAA. 49 U.S.C. § 46110(c)." Doc. 125 at 35.  Further, the

Federal Defendants assert that it makes no difference that Plaintiff is challenging a failure to act,

and not an action itself.  *Id.* (citing *Kabeller, Inc. v. Busey*, 999 F.2d 1417, 1421-22 (11th Cir.

1993) (per curiam); *Air Lines Pilots Ass'n v. CAB*, 750 F.2d 81, 84 (D.C. Cir. 1984); *Telecomms.

Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984)).  In *Kabeller*, for example, the

Eleventh Circuit explained that "where a statute commits review of agency action to the Court of

Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject

to the exclusive review of the Court of Appeals." *Id.* at 1420.

In response to this first point, Plaintiff again makes no attempt to distinguish the foregoing

authorities cited by the Federal Defendants and cites no decisional authority to the Court in return.

Doc. 130 at 37-40.  Instead, Plaintiff quotes the various statutes and regulations at issue and

provides his own interpretations, asserting that the challenged agency action is neither an "order" nor is it issued by the Secretary of Transportation, so § 46110 does not apply to vest jurisdiction in the courts of appeals. *Id.*[4]

As with the claims against TSA and DHS, the undersigned agrees with the Federal Defendants that the claims against DOT in Count 15 should be dismissed as jurisdiction is vested in the courts of appeals pursuant to § 46110.

In addition, the Federal Defendants argue that Plaintiff's request for mandamus relief in Count 15 should be dismissed because Plaintiff has failed to meet either of the requirements for seeking such relief under 28 U.S.C. § 1361.   Doc. 125 at 36-40.   "Mandamus jurisdiction is appropriate only where (1) the defendant owes a clear nondiscretionary duty to plaintiff and (2) the plaintiff has exhausted all other avenues of relief." *Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1295 (11th Cir. 2004); *see Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (explaining that mandamus "is intended to provide a remedy for plaintiff only if he has exhausted all other avenues of relief" and "the defendant owes him a clear nondiscretionary duty").   The undersigned recommends that this argument should not be reached if the Court finds that jurisdiction lies in the courts of appeals.

---

[4] The undersigned notes that in his response on this issue Plaintiff appears to demand discovery. This occurs throughout his response.   To the extent Plaintiff is attempting to compel or request discovery through the response, that request is denied as improper.   A party cannot make a request for relief in a response, and certainly not in a response to a motion to dismiss and for summary judgment.   On the other hand, to the extent Plaintiff is simply attempting to avoid summary judgment as premature because he requires discovery, this is a bit ironic because Plaintiff moved for summary judgment first (Doc. 83).   Regardless, the undersigned is recommending that the Complaint be dismissed and is not providing any recommendation concerning summary judgment other than both motions for summary judgment should be denied as moot.   So, Plaintiff's apparent demands for discovery—whether as actual demands or simply to avoid summary judgment—are also moot.

Nevertheless, alternatively, the undersigned agrees that the request for mandamus relief is due to be denied.  "The party seeking mandamus has the burden of demonstrating that his right to the writ is clear and indisputable."  *Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1036-37 (11th Cir. 2021) (internal citations and quotations omitted).  First, the Federal Defendants argue that Plaintiff failed to allege that he followed or exhausted other available avenues for relief.  The undersigned agrees.  Indeed, Plaintiff sought an exemption just days before attempting to board a flight, and his exemption request appears—according to the Complaint—to have been based on the asserted illegality of the exemption process, not a disability or medical issue that would have prevented him from wearing a mask.  Further, the Complaint was filed within days of his attempt to board his first of several booked flights, and there are no allegations that Plaintiff attempted to obtain a mask exemption from any agency or airline in relation to any of those other flights.  In response, Plaintiff appears to baldly assert that exhaustion would be futile because the agencies involved are biased or somehow acting in bad faith.  But Plaintiff makes no allegations that plausibly support that conclusion.[5]  Further, as the Federal Defendants assert, there is no allegation by Plaintiff that he attempted to follow DOT's complaint procedures by making any kind of complaint to DOT prior to filing this case.

Second, the undersigned agrees that Plaintiff has failed to allege a "clear and undisputable right to require DOT to take an enforcement action."  Doc. 125 at 38-40.  Plaintiff almost entirely

---

[5] Here, the undersigned notes that every court in which Plaintiff would litigate his claims—this Court, the Eleventh Circuit Court of Appeals, and the United States Supreme Court—have rules in place that require litigants to wear masks in court facilities as part of the courts' COVID-19 protocols.  Plaintiff's conclusory allegations that a mask requirement by a government agency (or a branch of the United States government) somehow itself evidences bias by that agency (or the futility of an exemption request) is baseless and fails to meet the plausibility standard of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

fails to address this issue in his response. *See* Doc. 130 at 37-40. Regardless, it appears that Plaintiff simply wants DOT to exercise its discretion to take a different action than it has (by acting in a way consistent with Plaintiff's definition of enforcement of the ACAA),[6] and he has neither alleged nor established that DOT "owes him a clear nondiscretionary duty" to take the action Plaintiff desires—i.e., enforcement of the ACAA in such a way that allows Plaintiff to forgo wearing a mask or to forgo seeking an exemption from wearing a mask. *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003). Thus, the undersigned alternatively recommends that Count 15 against DOT be dismissed to the extent Plaintiff seeks mandamus relief in that Count.

### 3. <u>Claims Against The President of the United States (Counts 5-8 and 23)</u>

In Counts 5-8 and 23, Plaintiff purports to seek relief directly against the President of the United States. The Federal Defendants argue that claims directly against the President must be dismissed, as the Court may not order the President to perform any particular action. Doc. 125 at 40-41 (citing *Mississippi v. Johnson*, 71 U.S. 475, 501 (1867) (explaining that federal courts have "no jurisdiction of a bill to enjoin the President in the performance of his official duties"); *Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992) (plurality op.) (stating that a "grant of injunctive relief against the President himself [was] extraordinary, and should have raised judicial eyebrows")). In response, Plaintiff asserts that the President "set in motion" the FTMM and ITTR by issuing Executive Order 13998, which, Plaintiff asserts, the President issued in bad faith. Doc. 130 at 41-42.

---

[6] This can be seen by looking to the four paragraphs in the Complaint that make up the actual allegations of Count 15. Doc. 1 at 195.

Plaintiff appears to seek declaratory and injunctive relief against the President by naming the President as part of the Federal Defendants in Counts 5-8 and 14[7] and by explicitly naming the President in Count 23.  Even without accepting the government's contention that no claim at all can lie against the President for injunctive or declaratory relief in this context, the undersigned has little difficulty finding that any claim in the Complaint against the President is due to be dismissed. Indeed, the Complaint contains no plausible allegations supporting a request for relief against the President.  For example, the executive order that Plaintiff now asserts in his response is so fundamental to his claims against the President is not mentioned in any of the Counts naming the President.  Indeed, any allegations connecting the President explicitly to the executive order are in paragraphs 99 and 139 of the Complaint, and those paragraphs contain no allegations of wrongdoing on the part of the President.  The executive order is mentioned a few more times in the body of the Complaint, but almost always in the context of an agency's actions implementing it, not specifically concerning the executive order or any action by the President.  Finally, paragraph A in the request for relief does contain a request that the Court find the executive order unconstitutional, but that is untethered to any count or any particular action by the President.  So, Plaintiff's argument in the response is unpersuasive.  Thus, the undersigned recommends that any claim against the President is due to be dismissed.

### C.  Plaintiff Lacks Standing for Claims Challenging the ITTR (Counts 19-23)

In Counts 19-23, Plaintiff challenges the ITTR.  The Federal Defendants assert that Plaintiff lacks standing to challenge the ITTR because there is no evidence in the record that the Defendant currently has any international travel plans, and his alleged trip to visit his brother in

---

[7] The Federal Defendants do not identify Count 14 in this portion of their motion, but the analysis applies with equal force to this Count.

Germany has "long since passed."  Doc. 125 at 41-42.  The Federal Defendants assert, in sum, that now that the time for Plaintiff's international trip has passed, Plaintiff has no concrete plans for international travel and, thus, there is no "actual or imminent injury that the Supreme Court requires." *Id*. (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992)).  Plaintiff states that he clearly has been attempting to visit his brother in Germany and has rescheduled the trip due to this litigation.  Doc. 130 at 42-43.

The undersigned agrees with the Federal Defendants that there are no allegations in the Complaint—or evidence in the record—that support a finding that Plaintiff currently has an international trip planned.  That said, Plaintiff did have such a trip planned and has rescheduled that trip during this litigation—often requesting expedited rulings so that he could make the trip.  Indeed, when Plaintiff filed his response on August 18, 2021, he asserted that he had an international trip planned for September 12, 2021.  Doc. 130 at 43.  So, while the undersigned recommends that Counts 19-23 be dismissed based on the current record before the Court, no further opinion is expressed concerning the ability of Plaintiff to replead claims related to the ITTR in any amended complaint filed.

**D.  Claims Against GOAA and LYNX**

In Counts 17 and 18, Plaintiff purports to assert claims against GOAA and LYNX respectively.  In each Count, Plaintiff alleges that these non-federal entities violated Florida Executive Order 21-102 (issued by Florida Governor Ron DeSantis) by enforcing a mask mandate, i.e., the FTMM.  That state executive order, in relevant part, prohibits localities in Florida from enacting and enforcing mask mandates.

Both GOAA and LYNX move to dismiss on various grounds, including that the Complaint is a shotgun pleading.  The Court agrees.  But not only is the Complaint a shotgun pleading as

already stated herein, these claims are simply not cognizable in federal court.[8]  Indeed, in Counts 17 and 18, Plaintiff fails to state any plausible claim for relief, and the Counts are due to be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for at least two reasons.[9]  First, as GOAA and Lynx persuasively argue, there is no private right of action under the executive order.  Looking to the plain language of the executive order, it provides for no such action, whether explicitly or implicitly.  Second, even if there were a private right of action, the allegations in the Complaint do not support a conclusion that GOAA or LYNX violated the executive order.  Indeed,

---

[8] Indeed, though not directly raised by GOAA or LYNX, the undersigned is concerned that the Court lacks subject matter jurisdiction to adjudicate these claims, which are essentially claims that a state or municipal entity failed to follow the executive order of the state's governor.  No jurisdictional basis is explicitly stated in the Complaint for these claims, and they involve no federal question.  Nor do the claims involve questions of fact or law so intertwined with Plaintiff's claims against the Federal Defendants that judicial economy, fairness, convenience, or comity would be served by this Court (in this case) determining whether these state or municipal entities violated their state governor's executive order concerning COVID-19 and (intertwined with that) whether any person may bring an action for such an alleged violation—which is a novel and complex issue of state law.  *See Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 532 (11th Cir. 2015) (finding that a district court's decision to retain supplemental jurisdiction over novel and complex state law claims was an abuse of discretion).  To the extent Plaintiff is inviting the Court to exercise supplemental over these claims, it is recommended that the Court instead exercise its discretion to decline that invitation.  This is an independent basis to dismiss these claims, and if the Court agrees, it obviates the need to address the merits of the Rule 12(b)(6) challenges by GOAA and LYNX.

[9] In addition, GOAA—but not LYNX—asserts Count 17 is due to be dismissed with prejudice pursuant to Rule 12(b)(1) because Plaintiff lacks standing as he suffered no injury in fact—i.e., GOAA officials allowed Plaintiff to remove his mask at the airport when he stated that he had applied for a medical exemption with the airline.  Doc. 49 at 5-8.  Plaintiff responds that he did suffer an injury because he was "bothered" by GOAA officials and that was an invasion of his privacy.  Doc. 100.  The undersigned recommends that Plaintiff has attempted to allege a claim based on GOAA's alleged enforcement of the FTMM in violation of state law—and he has alleged that GOAA enforced the FTMM, even if he was granted an on-the-spot exemption.  He appears to be alleging that the enforcement in violation of state law harmed him, not that GOAA required him to wear a mask, because it did not.  So, while this is an inherent difficulty in attempting to construe *pro se* pleadings such as this one, the undersigned recommends that Count 17 be dismissed because it fails to state any claim for relief, not because Plaintiff lacks standing to bring it.  Of course, if the Court determines Plaintiff lacks standing it need not address whether the claim was sufficiently pled.

the executive order applies to enactments and restrictions issued by local governments.  GOAA and LYNX are not local governments, nor (even if they could be construed as such) did they make any enactment or restriction, nor did they enforce any enactment or restriction by a local government.  The regulations enforced here were federal regulations enacted by federal agencies, and Florida's executive order does not apply to federal agencies or the regulations they issue.[10]

While the Court has considered them, Plaintiff's arguments against GOAA's and LYNX's motions to dismiss are entirely inapposite and warrant little discussion.  Overall, in response, Plaintiff attempts to save Counts 17 and 18 by stating that they allege something that they do not—whether a violation of federal regulations, or the Florida constitution, or the United States Constitution.  But in considering a motion to dismiss, the Court considers the claims alleged in the Complaint, not any recharacterization of those claims in a plaintiff's response to a motion to dismiss.

Accordingly, the undersigned recommends that Counts 17 and 18 against GOAA and LYNX, respectively, be dismissed.

**E.  <u>Whether Dismissal is With Prejudice</u>**

Finally, the undersigned acknowledges that the Court must liberally construe *pro se* pleadings and has done so in this case.  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).  A *pro se* pleading, however, must "still comply with procedural rules governing the proper form of pleadings," *Hopkins v. St. Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir.

---

[10] The undersigned notes that even if Plaintiff's claims were otherwise cognizable, it appears that Plaintiff failed to comply with Florida Statutes section 768.38 because Counts 17 and 18 fall within the newly-enacted statute's requirements for COVID-19 claims against governmental entities, and those Counts are neither pled with particularity nor contains the required physician's affidavit.

2010),[11] because the Court will not "rewrite an otherwise deficient pleading in order to sustain an action," *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1169 (11th Cir. 2014) (citation omitted).  A *pro se* plaintiff must generally be given one chance to amend a pleading "if it appears a more carefully drafted [pleading] might state a claim upon which relief can be granted even if the plaintiff never seeks leave to amend."  *Silva v. Bieluch*, 351 F.3d 1045, 1048-49 (11th Cir. 2003) (internal quotations omitted).

Here, the undersigned recommends that Plaintiff be given leave to replead all of his claims except those against DHS, TSA, DOT, the President of the United States, GOAA, and LYNX.  As to those claims, and for the reasons stated in the foregoing paragraphs, the undersigned finds that it does ***not*** appear that a more carefully drafted pleading might state a claim for relief.  Repleading of those claims would be futile.

## III.     Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1.  The Motion to Dismiss Count 17 by Defendant Greater Orlando Aviation Authority (GOAA) (Doc. 49) should be **GRANTED** such that **Count 17 be dismissed with prejudice**;

2.  The Motion to Dismiss Count 18 by Defendant Central Florida Regional transportation Authority (LYNX) (Doc. 82) should be **GRANTED** such that **Count 18 be dismissed with prejudice**;

---

[11] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.  *See* 11th Cir. R. 36-2.

3. The Motion for Summary Judgment Against All Federal Defendants on Counts 1-2, 4-6, 9-10, 12, 19-20, & 22-23 by Plaintiff (Doc. 83) be **DENIED as moot** if the Complaint is dismissed as recommended herein;[12] and

4. The Motion to Dismiss and Cross Motion for Summary Judgment by the Federal Defendants (Doc. 125) be:

   a. **GRANTED in part** to the extent that any **claims against DHS, TSA, and DOT be dismissed without leave to replead in this Court**;

   b. **GRANTED in part** to the extent that any **claims against the President of the United States, GOAA, and LYNX be dismissed with prejudice**;

   c. **DENIED as moot** to the extent that it requests summary judgment or any other relief;[13] and

5. Plaintiff be **DIRECTED** to file an amended complaint consistent with the Court's order on this Report and Recommendation within a set number of days after that order is issued.

---

[12] The undersigned notes that Plaintiff moved for summary judgment before the Federal Defendants had even responded to the Complaint.  In turn, the Federal Defendants moved for summary judgment as they responded to the Complaint.  The result is much spilled ink on judgment prior to the pleadings even being set.  To be sure, the parties requested, and the Court granted, leave to take this procedural course (and to greatly exceed the normal page limitations and restrictions on replies), but leave should not be confused for an endorsement.

[13] In making the foregoing recommendations, the undersigned has not addressed several other grounds for dismissal asserted by the Federal Defendants.  Because of the shotgun nature of the pleading, those other grounds cannot adequately be addressed.  It is recommended that the Federal Defendants motion be denied without prejudice as to all other grounds they assert for dismissal, with leave to reassert any basis for dismissal if Plaintiff attempts to replead.

**NOTICE TO PARTIES**

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to serve and file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on October 7, 2021.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE