# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | | |
|---|---|---|
| **LUCAS WALL,** | : | |
| Plaintiff, | : | Case No. 6:21-cv-975-PGB-DCI |
| v. | : | District Judge Paul Byron |
| **CENTERS FOR DISEASE CONTROL & PREVENTION** *et al.*, | : | Magistrate Judge Daniel Irick |
| Defendants. | : | |

## PLAINTIFF'S OBJECTIONS TO SANCTIONS ORDER (DOC. 211)

COMES NOW plaintiff, *pro se*, and submits the following objections to the Court's Sanctions Order issued Jan. 18. Doc. 211.

1. I object to the statement that "Plaintiff Lucas Wall has exhibited a pattern of disrespect for this Court throughout this litigation." *Id.* at 1. In reality, the Court has exhibited from the beginning of this case a pattern of disrespect for me as a disabled *pro se* litigant fighting for my rights to be free of discrimination and *ultra vires* government mandates. *See,* e.g., Plaintiff's Motion to Disqualify Magistrate Judge Daniel Irick, filed June 25, 2021 – only 18 days after the Complaint was submitted. Doc. 61. Asking for emergency or time-sensitive relief – or merely requesting a ruling by a certain date – in no way shows "disrespect" for the Court. Any attorney would do the same as part of his duty to represent his client's best interests. The Court instead

1

shows its animus toward me because I can't afford a lawyer and takes action against a *pro se* plaintiff in a way it would never do against a member of the Bar for strongly advocating for his client.

2. The Court's bizarre stance that a plaintiff asking for prompt action on a motion for preliminary injunction – which by its very definition is a remedy that is of an urgent nature – is somehow "disrespectful" is contradicted by the numerous cases from other federal courts around the nation dealing with COVID-19 mandates that I have cited in my briefs and Notices of Supplemental Authority. In each case, the plaintiff(s) not only asked for emergency or time-sensitive relief, the judges in those matters promptly issued preliminary injunctions or stays. *See,* e.g., Docs. 44-45, 99, 149, 175-178, 185, 195, 200, 206, 208, and ___ (Notice of *Feds for Medical Freedom v. Biden*, filed Jan. 22). The only difference in all these cases versus this one? Plaintiffs in all the cited cases are represented by counsel. I am proceeding *pro se*.

3. Each and every time I have sought urgent action by this Court is because there is a date-certain event triggering such a request.

4. I object to the Court's finding that "Despite the Court's admonition, on January 10, 2022, Plaintiff submitted a Notice of International Flight Rebooking, in which he requests the Court to rule on the Motion for Preliminary Injunction 'no later than' January 21, 2022, so that he can fly to Germany. (Doc. 203). While not designated as 'time-sensitive' or an "emergency," the explicit demand for immediate attention amounts to such a label…" Doc. 211

at 1-2. Stating that a ruling is requested no later than Jan. 21 so I could take my Jan. 23 flight did not violate any prior order of the Court. The notice at issue (Doc. 203) was not labeled "Emergency" or "Time-Sensitive," as the Court itself noted (even though the matter plainly is "time sensitive" since it involves a flight booked on a specific date, a flight that would be taken were it not for the government mandates challenged in this litigation).

5. I object to the Court's statement that it "cannot continually excuse Plaintiff's tiresome attempts to find loopholes to its Local Rules and impertinent disregard for the Court's busy docket." Doc. 211 at 2. I have made no attempt to "find loopholes" to the Local Rules. Notably the Court's Sanctions Order does not reference a single rule that has been violated. And the rule regulating urgent motions does not clearly define what is considered an "emergency" or "time-sensitive": "If a party moves for emergency or time-sensitive relief, the title of the motion must include 'emergency' or 'time-sensitive,' and the motion must include an introductory paragraph that explains the nature of the exigency and **states the day by which a ruling is requested**." Local Rule 3.01(e) (emphasis added). I have complied with this rule. Conspicuously the rule instructs a party to state the day by which a ruling is requested – precisely the conduct I have been sanctioned for by asking for a ruling by a specific date in my Jan. 10 Notice of International Flight Rebooking (Doc. 203). I object to the Court sanctioning me for following the Local Rules.

3

6. Given the Local Rules' lack of articulating what is an "emergency" and what is "time sensitive," I have relied on the rules of the U.S. Court of Appeals for the 11th Circuit. An emergency motion is one if "The motion will be moot unless a ruling is obtained within seven days…" 11th Cir. R. 27-1(b). "Motions that do not meet [this] condition[] but in which a ruling is required by a date certain may be treated as 'time sensitive' motions." *Id*. I object to the Court sanctioning me for following the rules of its appellate circuit.

7. I have shown no "impertinent disregard for the Court's busy docket." The Court's docket is not of concern to me. My case is of concern to me. Obtaining urgent relief so I may visit my family abroad is of concern to me. The Court is, of course, within its authority to refuse to rule by my requested date. But asking the Court to do so because I need immediate relief does not show any "impertinent disregard" nor does it violate any rule. If the Court chooses to ignore my request, that is its prerogative. But the Court does not have the authority to belittle me because I am a *pro se* litigant who doesn't have the money to hire a lawyer. I represent my interests and will continue to express those to the Court – as any competent attorney would do for his clients.

8. I object to order that "the Court hereby **REVOKES** Plaintiff's electronic filing privileges and **NOTIFIES** Plaintiff that future violations of the Court's Orders and Local Rules will result in monetary sanctions." Doc. 211 (emphasis original). Not only is issuing a sanction against a *pro se* litigant fighting

4

for his civil rights – who has not violated any order or Local Rule – inappropriate, the actual sanction itself is perplexing as it has no relation to the supposedly offensive conduct. And the revocation of my electronic filing access likely harms the clerk's office and defense counsel more than it does me. Instead of my filings being automatically docketed by the Electronic Case Filing ("ECF") system, the clerk's staff will now have to manually docket everything I submit using the Court's *pro se* filing website, creating more work for Court personnel. Defense counsel, instead of having their filings automatically e-mailed to me by ECF, will now have to separately e-mail or postal-mail me their papers. Court staff likewise will have to mail me any future orders, costing the Court unnecessary time of its staff, unnecessary trash in paper and envelopes, and unnecessary taxpayer dollars in postage. And of course I won't receive anything mailed to me in a timely fashion since the Court is well aware I have been stranded away from my home for 7½ months solely because of the challenged Federal Transportation Mask Mandate and International Traveler Testing Requirement that have blocked me from flying and using any other mode of public transportation.

## DISCUSSION

Any observer can clearly perceive that the Court's Sanctions Order was issued not by any logic – as there is no rule against requesting relief by a certain date and the revocation of ECF access probably harms the Court itself and defense counsel

more than it does myself – but instead by a bias against the disabled, litigants who can't afford counsel, and/or those fighting against mask mandates. The Court has shown hostility toward me almost from the day this case began (as well is in the companion case *Wall v. Southwest Airlines*, No. 6:21-cv-1008).

I must express my concern that District Judge Paul Byron has now joined Magistrate Judge Irick in conduct that violates the canons of judicial ethics. The Court is acting not as a neutral arbiter of the legal issues presented to it, but as an adversary. No reasonable person could review this case and believe the Court is acting impartially.

Every individual has the right to a neutral and impartial judge so that he can present his case "with assurance that the arbiter is not predisposed to find against him." *Marshall v. Jerrico*, 446 U.S. 238, 242 (1980). As a matter of due process, a judge who fails the "appearance of impartiality" test may not sit as the judge in the case. *Hurls v. Ryan*, 752 F.3d 768 (9th Cir. 2011).

Federal judges must abide by the Code of Conduct for United States Judges ("CCUSJ"), a set of ethical principles and guidelines adopted by the Judicial Conference of the United States. "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which: (a) the judge has a personal bias or prejudice concerning a party…" CCUSJ Canon 3(C)(1)(a). It is imperative that judges make decisions according to the law, unclouded by personal bias or conflicts of

interest. Moreover, the Due Process Clause has been construed to guarantee litigants the right to a "neutral and detached" judge. *Ward v. Village of Monroeville*, 409 U.S. 57 (1972).

It is not enough that judges be impartial; the public must **perceive** them to be so. The CCUSJ therefore admonishes judges to "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary" and to "avoid impropriety and the appearance of impropriety in all activities."

When the impartiality of a judge is in doubt, the appropriate remedy is to disqualify him from hearing further proceedings. In *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), the Supreme Court reaffirmed that litigants have a due-process right to an impartial judge, and that under circumstances in which judicial bias is probable, due process requires disqualification. No judge may decide a case if he is biased for or against any party. *Tunney v. Ohio*, 273 U.S. 510, 523 (1927); *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970).

A judge shall not hear a case if "the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). In such cases, "the inquiry is an objective one. The Court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Caperton*.

I am not opting at this time to file a motion for Judge Byron to recuse himself, although I reserve the right to do so if this misconduct were to continue. The

7

CCUSJ instructs judges to "avoid impropriety and the appearance of impropriety in all activities," Canon 2, and specifically to "respect and comply with the law and [to] act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Canon 2(A).

"An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances ... would conclude that the judge's honesty, impartiality, temperament, or fitness to serve as a judge is impaired." Commentary to Canon 2(A). The impartiality of judges, and the appearance of impartiality, are important for ensuring public confidence in our federal courts. A disabled *pro se* litigant going up against the might of the federal government can't have any confidence in the Court's impartiality when it subjects him to rules that don't exist and sanctions him for conduct that any reasonable attorney would engage in due to his ethical duty to advocate for his client's best interests such as requesting a ruling on a preliminary injunction motion before a date-certain event. *See Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1329 (11th Cir. 2002); *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000).

An essential component of equal justice under the law is a neutral and detached judge to preside over court proceedings. Accordingly, it's not the judge's own beliefs, nor even the presence of actual bias that matters, but instead, the "objective risk of actual bias that required ... recusal." *Caperton* at 886.

"Once a judge whose impartiality toward a particular case may reasonably be questioned presides over that case, the damage to the integrity of the system is done." *Durhan v. Neopolitan*, 875 F.2d 91, 97 (7th Cir. 1989).

Notably Judge Byron's temperament toward me violates his own standards. In written responses to the Senate Judiciary Committee, Mr. Byron stressed that "a judge must be patient, considerate to the parties and litigants, demonstrate thoughtfulness, diligence, intellectual honesty… I would avoid any action which could convey even the ***appearance*** that all parties and their counsel are not receiving equal and impartial consideration from the court." (emphasis added).

I urge Judge Byron to remember his vow to the Senate during the confirmation process and rethink his actions in this case.

Respectfully submitted this 23rd day of January 2022.

*Lucas Wall*
Lucas Wall, plaintiff
435 10th St., NE
Washington, DC 20002
Telephone: 202-351-1735
E-Mail: Lucas.Wall@yahoo.com