## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**LUCAS WALL,**

          **Plaintiff,**

**v.**                                        **Case No: 6:21-cv-975-PGB-DCI**

**CENTERS FOR DISEASE
CONTROL & PREVENTION,
DEPARTMENT OF HEALTH &
HUMAN SERVICES, GREATER
ORLANDO AVIATION
AUTHORITY and CENTRAL
FLORIDA REGIONAL
TRANSPORTATION
AUTHORITY,**

          **Defendants.**
_____/

## **ORDER**

This cause comes before the Court on Plaintiff Lucas Wall's Time-Sensitive Motion for a Preliminary Injunction against Defendants the Centers for Disease Control and Prevention and the Department of Health and Human Services (collectively, the "**Federal Defendants**") (Doc. 191 (the "**Motion**")), the Federal Defendants' response in opposition (Doc. 199), and Plaintiff's Second Motion for Leave to File a Reply Brief (Doc. 201).[1] In his Motion, Plaintiff, wanting to fly to

---

[1] On December 29, 2021, the day after he filed this Motion, Plaintiff filed his First Motion for Leave to File a Reply Brief. (Doc. 192). The Court denied it without prejudice as premature, stating that Plaintiff can move for leave to file a reply brief once the Federal Defendants submitted their response in opposition. (Doc. 196).

Germany to visit his family, seeks a "worldwide" preliminary injunction against the Federal Defendants' enforcement of two mandates issued in response to the COVID-19 pandemic: the federal transportation mask mandate ("**FTMM**"), which requires individuals traveling via public transportation to wear a mask; and the international traveler testing requirement ("**ITTR**"), which requires international travelers to obtain a negative COVID-19 test prior to departure to the United States from a foreign country. (Docs. 191, 191-1).[2] Recognizing that the Court may have qualms about enjoining the Federal Defendants on a global scale, Plaintiff presents two alternatives: a preliminary injunction against the Federal Defendants' enforcement of the FTMM as to "any person who self-declares a medical condition that prevents them from safely wearing a face covering"[3]; or a preliminary injunction against the Federal Defendants' enforcement of the FTMM and the ITTR as to Plaintiff, only, to accommodate his constantly-rescheduled flight to Germany. (Doc. 191, p. 1 n.1; Doc. 191-2, p. 1; Doc. 191-3, pp. 1–2).

To obtain a preliminary injunction, Plaintiff, as the movant, must establish: (1) a substantial likelihood of success on the merits of the underlying case; (2) irreparable injury in the absence of the proposed preliminary injunction; (3) the

---

[2] Originally, Plaintiff also sued the Transportation Security Administration ("**TSA**"), the Department of Homeland Security ("**DHS**"), the Department of Transportation ("**DOT**"), President Joseph R. Biden, Jr., the Greater Orlando Aviation Authority ("**GOAA**"), and the Central Florida Regional Transportation Authority ("**LYNX**"). (Doc. 1). On December 18, 2021, the Court dismissed with prejudice Plaintiff's claims against the TSA, the DHS, the DOT, and the President (Doc. 187), and Plaintiff does not request preliminary injunctive relief as to the GOAA and LYNX (Doc. 191, p. 2 n.2).

[3] Notably, Plaintiff still proposes a worldwide preliminary injunction against the Federal Defendants' enforcement of the ITTR. (Doc. 191-2, p. 2).

threatened injury to the movant exceeds the damage that the preliminary injunction may cause the opposing party; and (4) the preliminary injunction would not disserve the public interest. *Swain v. Junior*, 961 F.3d 1276, 1284–85 (11th Cir. 2020).[4] Ultimately, "a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (per curiam) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

After careful consideration of the record and the parties' respective briefs, the Court concludes that a reply brief and/or a hearing on the Motion are unnecessary[5] because it is obvious that Plaintiff lacks an irreparable injury, "the *sine qua non* of [preliminary] injunctive relief." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (internal quotations omitted); *Siegel*, 234 F.3d at 1176 ("Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."). Thus, the Court finds that the matter is ripe for review and that the Motion is due to be denied.

---

[4] Where, as here, the government is the opposing party, the third and fourth factors "merge." *Id.* at 1293 (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

[5] "A district court has inherent authority to manage its own docket 'so as to achieve the orderly and expeditious disposition of cases.'" *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).

In his Motion, Plaintiff asserts three purported irreparable injuries. First, Plaintiff worries that he will be unable to find a rapid COVID-19 test within the time frame delineated by the ITTR in Germany and thus be "stranded abroad." (Doc. 191, pp. 22).[6] This professed irreparable injury is both remote and speculative and cannot entitle Plaintiff to a preliminary injunction against enforcement of the ITTR. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *Siegel*, 234 F.3d at 1176 ("As we have emphasized on many occasions, the asserted irreparable injury must be neither remote nor speculative, but actual and imminent." (internal quotations omitted)).[7]

Second, Plaintiff insists that he continues to miss his periodically postponed flight to Germany because of his inability to wear a mask while travelling pursuant to the FTMM. (Doc. 191, pp. 21–22).[8] This is a sufficient injury for standing purposes—but it is certainly not an *irreparable* one warranting preliminary

---

[6] "I face a strong possibility I would suffer the irreparable injury of being stranded abroad if access to rapid COVID-19 testing within a day of departure is not available." (*Id.* at p. 22).

[7] In Plaintiff's Second Motion for Leave to File a Reply Brief, he states that "[h]arm from being stranded abroad due to lack of test availability is not speculative, as seen by the shortage of tests right here in America." (Doc. 201, p. 2). A shortage of COVID-19 tests in America does not demonstrate a shortage of COVID-19 tests in Germany.

[8] "I'm suffering irreparable harm of being banned from the nation's entire public[] transportation system due to the FTMM because I medically can't wear a face mask even though I've been fully vaccinated and boosted as the [Centers for Disease Control and Prevention] urge[]." (*Id.* at p. 21).

injunctive relief. Plaintiff's desire to, in his words, "release [his] pent-up wanderlust" is not an emergency, and his Motion fails to identify any other exigency justifying the issuance of a preliminary injunction against the Federal Defendants' enforcement of the FTMM. (*Id.* at p. 23). Even accepting as true Plaintiff's unsupported claim that his medical conditions prevent him from wearing a mask, Plaintiff fails to demonstrate that he has exhausted the procedure for obtaining an exemption from the FTMM for his prospective trip to Germany.[9] And the outright refusal to wear a mask, without possessing a valid exemption from the FTMM, is a voluntary choice, not irreparable harm. *See Scroos LLC v. Att'y Gen. of the United States*, No. 6:20-cv-689, 2020 WL 5534281, at *3 (M.D. Fla. Aug. 27, 2020) (first citing *Salt Lake Trib. Publ'g Co. v. AT&T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003); then citing *Bellin v. La Pensee Condo. Ass'n*, No. 05-80071-CIV, 2005 WL 8156021, at *9 (S.D. Fla. Oct. 13, 2005), *report and recommendation adopted*, 2006 WL 8433644 (S.D. Fla. Jan. 6, 2006); and then

---

[9] Plaintiff mentions that he missed numerous flights because of his inability to wear a mask while travelling pursuant to the FTMM, but the basis of this Motion is Plaintiff's future flights, not his prior flights. (*Id.* at pp. 21–22). Preliminary injunctive relief is, of course, forward-looking, to prevent irreparable harm, not to remedy past harms, which is the purpose of this lawsuit. *See Winter*, 555 U.S. at 22; *Siegel*, 234 F.3d at 1176.

Plaintiff also mentions that "multiple airlines" have denied his applications for exemptions from the FTMM, but, again, the Motion is silent regarding Plaintiff's efforts to obtain an exemption for his flight to Germany. (*Id.* at p. 2). In fact, in his Second Motion for Leave to File a Reply Brief, Plaintiff states: "I have not attempted to obtain a mask exemption for this next flight because doing so would be futile given the illegal procedures United [Airlines] may use as stated in the FTMM. Many others have tried to get mask exemptions from United [Airlines] and been denied. The exemption process is illegal and a total farce." (Doc. 201, p. 1). Plaintiff's perceived futility of the exemption procedure, based on his predictions of United Airline's actions and others' experiences, does not allow him to bypass that process with a preliminary injunction. The fact remains that Plaintiff chooses not to pursue the options available to him.

5

citing 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. 2020)) ("Self-inflicted wounds do not constitute irreparable harm."). Plaintiff can still fly in compliance with the FTMM, or he can apply for an exemption to the FTMM, or he can continue changing his Germany flight. (*See* Docs. 186, 203, 215, 218, 220, 227). Regardless, this lawsuit adequately addresses Plaintiff's constitutional and statutory challenges to the mandate.

In other words, the likelihood that Plaintiff will decide to continue delaying his vacation to Germany during the pendency of this action, rather than go on his trip and comport with the FTMM or apply for an exemption to the FTMM, is simply not an urgent situation requiring the "extraordinary and drastic remedy" of a preliminary injunction. The inconvenience to Plaintiff of rescheduling his European sojourn is not an irreparable injury.

Third, Plaintiff contends that the ITTR and the FTMM violate his constitutional rights and, therefore, he possesses an irreparable harm. (Doc. 191, pp. 21–22). This assertion is contrary to binding precedent. The Eleventh Circuit has determined that an alleged violation of constitutional rights does not always constitute irreparable harm: "The only areas of constitutional jurisprudence where we have said that an on-going violation may be presumed to cause irreparable injury involve the right of privacy and certain First Amendment claims establishing an imminent likelihood that pure speech will be chilled or prevented altogether." *Siegel*, 234 F.3d at 1178. This case does not implicate the right of privacy or the

First Amendment. (*See* Doc. 188). Indeed, in his Motion, Plaintiff only references his Fifth Amendment right to due process and his right to travel. (Doc. 191, pp. 13–16, 20–23).

Furthermore, the convoluted, extensive procedural posture of this case bolsters the Court's judgment.[10] Plaintiff initiated this action on June 7, 2021. (Doc. 1). Three days later, Plaintiff filed an Emergency Motion for a Temporary Restraining Order against the Federal Defendants' enforcement of the FTMM and the ITTR (Doc. 8), which the Court denied on June 15, 2021, for lack of irreparable injury. (Doc. 28).

On June 11, 2021, Plaintiff filed a Time-Sensitive Motion to Exceed the Court's Page Limits, seeking the Court's permission to file a 50-page request for preliminary injunctive relief (Doc. 9), which the Court denied that same day (Doc. 10). In blatant defiance of this ruling and Local Rule 3.01(a), which provides that motions and other legal memorandums must consist of "a single document no longer than [25] pages inclusive of all parts," Plaintiff filed *two* 25-page Motions for Preliminary Injunctive Relief on June 17, 2021, and June 18, 2021, respectively. (Docs. 33, 36). Thus, on June 22, 2021, United States Magistrate Judge Daniel Irick struck them, allowing Plaintiff to refile one 25-page request for preliminary injunctive relief. (Doc. 55).

---

[10] Given the bloated state of this file, a consequence of Plaintiff's inundation of the docket with unnecessary filings, the Court restricts its discussion of this case's history to those details that are directly relevant here.

Instead of doing so, Plaintiff filed an Emergency Motion to Vacate Magistrate Judge Irick's Order Striking Plaintiff's Motions for Preliminary Injunctive Relief (Doc. 56), which the Court denied, noting Plaintiff's disingenuous conduct (Doc. 67).[11] The Court also explained that Plaintiff's travel plans do not constitute an "Emergency" and warned him that further violation of Local Rule 3.01(e) would result in appropriate sanctions. (*Id.* at pp. 6–7).

Meanwhile, Plaintiff appealed these rulings in the Court of Appeals for the Eleventh Circuit (Docs. 58, 59, 60),[12] which the Eleventh Circuit dismissed, highlighting that Plaintiff's "refusal to refile his preliminary injunction motion in [this Court] in compliance with the [] [L]ocal [R]ules . . . [was] an insufficient basis for [the] exercise [of] appellate jurisdiction." (Doc. 74, p. 2; *see* Doc. 70). Thereafter, Plaintiff submitted an Emergency Application for a Writ of Injunction in the Supreme Court of the United States (Doc. 89), which Justice Clarence Thomas summarily denied on July 14, 2021 (Doc. 91).[13]

---

[11] Additionally, Plaintiff filed a Motion to Disqualify Magistrate Judge Irick, accusing him of bias. (Doc. 61). Magistrate Judge Irick denied the Motion to Disqualify, correctly holding that Plaintiff's dissatisfaction with his Order Striking Plaintiff's Motions for Preliminary Injunctive Relief is not a basis for recusal. (Doc. 98).

[12] Not only did Plaintiff attempt to appeal the Court's Order Denying Plaintiff's Request for a Temporary Restraining Order (Doc. 28) and Magistrate Judge Irick's Order Striking Plaintiff's Motions for Preliminary Injunctive Relief (Doc. 55), but Plaintiff also sought to appeal the Court's Order Referring the Case to Magistrate Judge Irick for Reports and Recommendations, issued on June 17, 2021 (Doc. 31).

[13] In their response brief, the Federal Defendants state that Plaintiff (and various individuals that he is "working collectively with") filed emergency motions for preliminary injunctive relief against the TSA's enforcement of the FTMM in the Second, Fourth, Fifth, Sixth, Eighth, and Eleventh Circuits. (Doc. 199, pp. 14–15). The Fourth and Eighth Circuits rejected the requests, and the Second, Fifth, Sixth, and Eleventh Circuits transferred the cases to the D.C. Circuit, which then rejected the requests. (*Id.*). The Federal Defendants also state that Plaintiff

8

Yet Plaintiff failed to refile the instant Motion until December 28, 2021, *over six months* from his first improper request(s) and *five months* from the Eleventh Circuit's dismissal of his appeal, which "note[d]" Plaintiff's "refusal to refile his preliminary injunction motion . . . in compliance with [this] [C]ourt's [L]ocal [R]ules." (Doc. 74, p. 2). In the interim, Plaintiff buried this Court in an avalanche of *other* filings, waiting, inexplicably, to bring this Motion until 10 days after the Court issued an opinion evaluating three Motions to Dismiss the Complaint, competing Motions for Summary Judgment, Magistrate Judge Irick's Report and Recommendations as to all these disparate requests, Plaintiff's Objection thereto, and all the pertinent responses and replies to the above (Doc. 187). Plaintiff's egregious—and unexplained—inaction clearly exposes his lack of irreparable injury. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm. . . . the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits. For this reason, our sister circuits and district courts within this Circuit and elsewhere have found that a party's failure to act with speed or urgency in moving for a preliminary

---

filed another emergency application for a preliminary injunction against the TSA's enforcement of the FTMM with the Supreme Court on November 29, 2021, which Chief Justice John Roberts denied without comment, without reference of the matter to the full Supreme Court, and without any noted dissent. (*Id.* at p. 15). On December 21, 2021, Plaintiff filed an identical request with the Supreme Court, which Justice Gorsuch distributed for the Supreme Court's January 14, 2022, Conference. (*Id.* at p. 15 n.3).

9

injunction necessarily undermines a finding of irreparable harm." (internal citations omitted)).

Unfortunately, the Court's summary of the background of this case cannot not end here. The history of this case not only contravenes Plaintiff's claim of irreparable injury, but it also reveals Plaintiff's sanctionable conduct. Specifically, in light of the above rulings, the Court struck the "Time-Sensitive" designation from this Motion as another violation of Local Rule 3.01(e) on January 4, 2022. (Doc. 196). In doing so, the Court again explained that Plaintiff's travel plans do not rise to the level of exigency that justifies expedited relief and repeated its sanctions warning. (*Id.* at pp. 2–3). Despite this admonition, on January 10, 2022, Plaintiff filed a Notice of International Flight Rebooking, requesting the Court to rule on the Motion "no later than" January 21, 2022, so that he can fly to Germany. (Doc. 203). The Court found that although Plaintiff did not designate this filing as "Time-Sensitive" or an "Emergency," the explicit demand for immediate attention amounted to such a label. (Doc. 211). Emphasizing that, throughout this litigation, Plaintiff has tiresomely attempted to find loopholes to the Court's Local Rules and has displayed impertinent disregard for the Court's busy docket, the Court revoked Plaintiff's electronic filing privileges and advised him that further violations of its Orders and Local Rules would result in monetary sanctions. (*Id.*).

A few days later, Plaintiff filed "Objections" to the Court's Sanction Order. (Doc. 214). Plaintiff also filed a second Notice of International Flight Rebooking, this time requesting a ruling on the Motion prior to his rescheduled flight to

Germany on January 30, 2022, fully aware that his demand violated the Court's Sanction Order. (Doc. 215).[14] Once that "deadline" elapsed, Plaintiff filed a third Notice of International Flight Rebooking, requesting a ruling on the Motion by his re-rescheduled flight to Germany on February 6, 2022 (Doc. 218), and, to this date, he continues to follow this pattern, each time requesting that the Court rule on the Motion by a certain day (Docs. 220, 227, 238).[15]

As to Plaintiff's "Objections," parties cannot object to an order by a United States District Court, and therefore the Court strikes this filing as improper. *Cf.* FED. R. CIV. P. 72 (allowing parties to object to a Magistrate Judge's non-dispositive orders and Reports and Recommendations). Furthermore, when the Court revoked Plaintiff's electronic filing privileges, it intended to exclude Plaintiff from its electronic filing system completely, unaware that the Middle District of Florida

---

[14] "I suppose I don't dare ask for a ruling by another specific day, but the Court's conduct will not deter me from asserting what is critically important to my family and me." (*Id.* at p. 2).

[15] In addition to his travel plans, some of these Notices of International Flight Rebooking cite Plaintiff's brother's separation from his wife, Plaintiff's sister-in-law, as the basis for Plaintiff's "urgent need to travel." (Doc. 215, p. 2; *see also* Docs. 218, 220, 227, 238). The personal lives of third parties to this litigation do not constitute an "Emergency" situation under Local Rule 3.01(e).

Further, in his Second Motion for Leave to File a Reply Brief, Plaintiff states: "The ability to change flights does not negate the irreparable harm of lost time spent with family abroad. Also, my brother and/or his wife could die before a final merits decision is reached, and there would be no way to rewind time to see them one final time." (Doc. 201, p. 1). For the reasons stated above, "lost time" is an injury, but not an irreparable one. Moreover, the Court notes that this is the first time throughout the course of this nine-month litigation that Plaintiff has expressed concern over his relations dying, and he does not provide any reasonable basis for this fear, such as a serious illness or debilitating accident. Interestingly, Plaintiff does not mention this concern in the Notices of International Flight Rebooking, including the ones filed after the Second Motion for Leave to File a Reply Brief. Death is certain and unpredictable— the Court cannot hand out preliminary injunctions on this ground alone. Otherwise, preliminary injunctions would proliferate, and the irreparable injury component would be a nullity.

11

established an electronic filing portal for *pro se* litigants during the COVID-19 pandemic. Consequently, the Court's sanction, meant to subdue the overwhelming amount of unnecessary and irrelevant filings by Plaintiff, has been ineffective. This portal is for unrestricted *pro se* litigants, not those who, like Plaintiff, have been sanctioned for violating the Court's Orders. Accordingly, the Court clarifies its Sanctions Order and, particularly given Plaintiff's recent violations of that Order, directs the Clerk of Court to restrict Plaintiff's access to the portal. Plaintiff must submit future filings in person or by mail, the typical rule for *pro se* parties.[16]

As to Plaintiff's litany of Notices of International Flight Rebooking, the Court strikes these as violations of its Sanctions Order. If Plaintiff files any future Notice of International Flight Rebooking, or anything similar, or in any other way violates any of the Court's Orders, then the Court will immediately strike the offending document without further notice to Plaintiff and refer it to Magistrate Judge Irick for a Report and Recommendations regarding appropriate sanctions.

Therefore, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for a Preliminary Injunction Against the Federal Defendants (Doc. 191) is **DENIED**.

2. Plaintiff's Second Motion for Leave to File a Reply Brief (Doc. 201) is **DENIED**.

---

[16] The Court further clarifies that its Sanctions Order does not revoke Plaintiff's ability to *receive* electronic notice of filings by Defendants. Rather, the Court limits the sanction to Plaintiff's ability to *file* electronically.

12

3. The Clerk of Court is **DIRECTED** to strike Plaintiff's "Objections" to the Court's Sanctions Order (Doc. 214).

4. The Clerk of Court is **DIRECTED** to strike Plaintiff's Notices of International Flight Rebooking (Docs. 211, 215, 218, 220, 227, 238). The Court advises Plaintiff that any future Notice of International Flight Rebooking, or anything similar, or any other violation of any of the Court's Orders will result in reference of the matter to Magistrate Judge Irick for a Report and Recommendations regarding appropriate sanctions.

**DONE AND ORDERED** in Orlando, Florida on March 4, 2022.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties