## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

LUCAS WALL,

              Plaintiff,

      v.                                    Case No. 6:21-cv-975-PGB-DCI

CENTERS FOR DISEASE
CONTROL AND PREVENTION,
*et al.*,

              Defendants.

## FEDERAL DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................. 1

BACKGROUND.................................................................................................... 2

I.      Statutory and Regulatory Background ........................................................ 2

II.     The COVID-19 Pandemic........................................................................... 4

III.    The Challenged Orders ............................................................................... 5

        a.      The CDC's Transportation Mask Order................................................ 5

        b.      The CDC's International Traveler Testing Order ................................. 6

IV.     This Lawsuit ............................................................................................... 7

ARGUMENT......................................................................................................... 8

I.      The Transportation Mask Order is authorized by the Public Health
        Service Act (PHSA) (Count 1)....................................................................... 8

II.     Plaintiffs' non-delegation claims are meritless (Counts 4 & 12). ................... 12

III.    The Transportation Mask Order is not arbitrary and capricious  (Count
        3). ................................................................................................................ 13

IV.     The CDC had good cause to issue the Transportation Mask Order
        without notice and comment (Count 2). ....................................................... 18

V.      The Transportation Mask Order does not violate the Constitution
        (Counts 5-7). ............................................................................................... 19

VI.     The Transportation Mask Order is consistent with the Air Carrier Access
        Act (ACAA) (Count 8). ................................................................................ 21

VII.    To the extent Plaintiff makes non-duplicative claims with respect to the
        International Traveler Testing Order, they are also meritless (Counts 9-
        12). .............................................................................................................. 21

VIII.   Plaintiff's requested relief is overbroad. ....................................................... 24

CONCLUSION ..................................................................................................... 25

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*A.L.A. Schechter Poultry Corp. v. United States*,
    295 U.S. 495 (1935) ............................................................................. 20

*Abdi v. Wray*,
    942 F.3d 1019 (10th Cir. 2019) ......................................................... 20

*Alabama Association of Realtors v. HHS*,
    141 S. Ct. 2485 (2021) ........................................................ 10, 11, 12

*Am. Ass'n of Exps. & Imps. Textile & Apparel Grp. v. United States*,
    751 F.2d 1239 (Fed. Cir. 1985) ......................................................... 23

*Bhd. of R.R. Trainmen v. Baltimore & O.R. Co.*,
    331 U.S. 519 (1947) ............................................................................ 11

*Biden v. Missouri*,
    142 S. Ct. 647 (2022) ................................................................. 12, 18

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*,
    781 F.3d 1271 (11th Cir. 2015) ......................................................... 25

*Bridges v. Hous. Methodist Hosp.*,
    543 F. Supp. 3d 525 (S.D. Tex. 2021) ............................................... 17

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ........................................................................... 24

*Corbett v. TSA*,
    19 F.4th 478 (D.C. Cir. 2021) ......................................................... 1, 6

*Cospito v. Heckler*,
    742 F.2d 72 (3d Cir. 1984) ................................................................ 20

*Dep't of Com. v. New York*,
    139 S. Ct. 2551 (2019) ...................................................................... 15

*Dep't of Homeland Sec. v. New York*,
    140 S. Ct. 599 (2020) ........................................................................ 25

*Dep't of Homeland Sec'y v. Regents of Univ. of Cal.*,
    140 S. Ct. 1891 (2020) ...................................................................... 14

*Doe v. Moore*,
    410 F.3d 1337 (11th Cir. 2005) ........................................................... 20

*Elhady v. Kable*,
    993 F.3d 208 (4th Cir. 2021) ................................................................ 21

*FCC v. Prometheus Radio Project*,
    141 S. Ct. 1150 (2021) ...............................................................8, 13, 15, 23

*Forbes v. Cnty. of San Diego*,
    No. 20-cv-00998, 2021 WL 843175 (S.D. Cal. Mar. 4, 2021) ............................ 21

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018) ...................................................................... 24

*Haig v. Agee*,
    453 U.S. 280 (1981)........................................................................ 20

*J. W. Hampton, Jr. & Co. v. United States*,
    276 U.S. 394 (1928)........................................................................ 12

*League of United Latin Am. Citizens v. Bredesen*,
    500 F.3d 523 (6th Cir. 2007) ................................................................ 21

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    140 S. Ct. 2367 (2020) ...................................................................18-19

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994)........................................................................ 24

*Medellin v. Texas*,
    552 U.S. 491 (2008)........................................................................ 17

*Miccosukee Tribe of Indians of Fla. v. United States*,
    566 F.3d 1257 (11th Cir. 2009) ............................................................. 13

*Miranda ex rel. M.M. v. Alexander*,
    No. 21-cv-535, 2021 WL 4352328 (M.D. La. Sept. 24, 2021) ............................ 14

*Mobil Oil Exploration & Producing Southeast, Inc. v. United Distribution Cos.*,
    498 U.S. 211 (1991)........................................................................ 24

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ....................................................................... 1-2

*Murphy v. NCAA*,
     138 S. Ct. 1461 (2018) ......................................................................... 19

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
     545 U.S. 967 (2005) ............................................................................. 11

*Nat'l Mining Ass'n v. Dep't of Labor*,
     812 F.3d 843 (11th Cir. 2016) .............................................................. 13

*NFIB v. OSHA*,
     142 S. Ct. 661 (2022) ........................................................................... 11

*Oakes v. Collier Cnty.*,
     515 F. Supp. 3d 1202 (M.D. Fla. 2021) ............................................... 14

*Pa. Dep't of Corr. v. Yeskey*,
     524 U.S. 206 (1998) ............................................................................. 11

*PDK Labs., Inc. v. DEA*,
     362 F.3d 786 (D.C. Cir. 2004) ............................................................. 19

*SEC v. Chenery Corp.*,
     332 U.S. 194 (1947) ............................................................................. 12

*Sierra Club v. Van Antwerp*,
     526 F.3d 1353 (11th Cir. 2008) ............................................................ 13

*Sosa v. Alvarez-Machain*,
     542 U.S. 692 (2004) ............................................................................. 17

*Stewart v. Justice*,
     518 F. Supp. 3d 911 (S.D. W. Va. 2021) .............................................. 14

*Town of Southold v. Town of E. Hampton*,
     477 F.3d 38 (2d Cir. 2007) ................................................................... 20

*Trump v. Hawaii*,
     138 S. Ct. 2392 (2018) ......................................................................... 25

*United States v. James*,
     No. 19-cr-8019, 2020 WL 6081501 (D. Ariz. Oct. 15, 2020) .............. 14

*Va. Soc'y for Human Life, Inc. v. FEC*,
     263 F.3d 379 (4th Cir. 2001) ............................................................... 24

iv

*Whitman v. Am. Trucking Ass'ns,*
   531 U.S. 457 (2001) ........................................................................ 12

*Wyeth v. Levine,*
   555 U.S. 555 (2009) ........................................................................ 19

*Zinman v. Nova Se. Univ., Inc.*,
   No. 21-cv-60723, 2021 WL 4025722 (S.D. Fla. Aug. 30, 2021) ......................... 14

**U.S. Constitution**

U.S. Const. art. VI, cl. 2 ...................................................................... 19

**Statutes**

5 U.S.C. § 553 ............................................................................18, 23

5 U.S.C. § 706 ................................................................................ 18

21 U.S.C. § 360bbb-3 ......................................................................... 17

42 U.S.C. § 264 ..........................................................................*passim*

42 U.S.C. §§ 264-272 .......................................................................2, 11

49 U.S.C. § 40105 ............................................................................ 17

49 U.S.C. § 41705 ............................................................................ 21

An Act to Establish a Department of Education, and for other purposes,
   Pub. L. No. 96-88, 93 Stat. 668 (1979) (codified at 20 U.S.C. § 3508(b)) .......................... 2

**Legislative Materials**

*Consolidation & Revision of Laws Relating to the Public Health Service*,
   H.R. Rep. No. 1364, 78th Cong. 2d Sess. (1944). ................................................. 2

**Administrative and Executive Materials**

42 C.F.R. pt. 70 ................................................................................ 3

42 C.F.R. § 70.2 ..................................................................... 3, 4, 12, 14

42 C.F.R. § 70.3 ................................................................................ 4

42 C.F.R. § 70.6 ................................................................................ 4

42 C.F.R. § 70.12 ..................................................................................... 4

42 C.F.R. § 71.31 ..................................................................................4, 12

42 C.F.R. § 71.32 ............................................................................... 4, 12, 22

CDC, *Order Under Section 361 of the Public Health Service Act, Requirement for Persons To Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025 (Feb. 3, 2021)...................................................................*passim*

*Control of Communicable Diseases, Apprehension and Detention of Persons With Specific Diseases, Transfer of Regulations*, 65 Fed. Reg. 49,906 (Aug. 16, 2000) .................................................................. 3

*Reorganization Plan No. 3 of 1966*, 31 Fed. Reg. 8855 (June 25, 1966), 80 Stat. 1610 (1966) ...................................... 2

CDC, *Requirement for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery From COVID-19 for all Airline or Other Aircraft Passengers Arriving Into the United States From Any Foreign Country*, 86 Fed. Reg. 69,256 (Dec. 7, 2021) ...................................................... 4, 5, 6, 23

## **Other Authorities**

CDC, COVID Data Tracker, https://perma.cc/BH8K-HHSG (Mar. 25, 2022) ................................................ 5

CDC, *Cruise Ship Travel During COVID-19* (updated March 14, 2022), https://perma.cc/A4PR-QDEL ...................................................................... 24

CDC, *How COVID 19 Spreads* (updated July 14, 2021), https://perma.cc/R38B-WAPL ......................................................................... 5

Sanitation, *Merriam-Webster.com Dictionary*, https://perma.cc/9ARR-YKYH ...................................................................... 9

## **INTRODUCTION**

"The COVID-19 global pandemic poses one of the greatest threats to the operational viability of the transportation system and the lives of those on it seen in decades." *Corbett v. TSA*, 19 F.4th 478, 480 (D.C. Cir. 2021). In response to that threat, the Centers for Disease Control and Prevention (CDC) has issued temporary orders that (with some exceptions) generally require (1) individuals to wear masks when traveling on public transportation conveyances like airplanes and trains; and (2) international air travelers to provide proof of a negative COVID-19 test (or recovery from COVID-19) before departure to the United States.

Plaintiff Lucas Wall claims that those orders exceed the CDC's statutory authority, are arbitrary and capricious or procedurally infirm under the Administrative Procedure Act (APA), and violate the U.S. Constitution. Underlying these challenges is Plaintiff's contrarian position that "face masks are totally ineffective in reducing coronavirus spread but are harmful to human health in at least 68 ways." Am. Compl. at 3, ECF No. 188.

All of these claims are meritless—both on the science, and on the law. Congress prudently gave the Executive Branch broad authority to take reasonable public-health measures to prevent the spread of communicable disease. That authority has never been more important than during this pandemic, and the measures at issue here— masking and testing—are conventional disease prevention steps, squarely in the heartland of that authority. Plaintiff offers no basis for this Court to accept his invitation "to substitute [his] judgment for that of the agency." *Motor Vehicle Mfrs.*

*Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  For those who seek to use our nation's public transportation systems during an unprecedented global pandemic of an airborne respiratory virus, Congress has entrusted those judgments to the medical experts at the CDC—not to Plaintiff.

The Court should enter summary judgment for Federal Defendants on all claims.

## BACKGROUND

### I.  Statutory and Regulatory Background

Congress enacted the Public Health Service Act in 1944.  *Consolidation & Revision of Laws Relating to the Public Health Service*, H.R. Rep. No. 1364, 78th Cong. 2d Sess., at 1 (1944).  The resulting statute, 42 U.S.C. § 264—part of a broader statutory scheme authorizing the Department of Health and Human Services (HHS) to take wide-ranging public-health actions, *see id.* §§ 264-272—authorizes the Secretary of HHS[1] "to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession."  *Id.* § 264(a).  The second sentence of subsection (a) further clarifies that "[f]or purposes of carrying out and enforcing such regulations,"

---

[1] Although the statute assigns authority to the Surgeon General, all statutory powers and functions of the Surgeon General were transferred to the Secretary of HHS in 1966, 31 Fed. Reg. 8855 (June 25, 1966), 80 Stat. 1610 (1966); *see also* Pub. L. No. 96-88, § 509(b), 93 Stat. 668, 695 (1979) (codified at 20 U.S.C. § 3508(b)).  The Secretary has retained these authorities despite the reestablishment of the Office of the Surgeon General in 1987.

the Secretary "may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary." *Id.*

Subsection (b) imposes specific limits on the Secretary's ability to "provide for the apprehension, detention, or conditional release of individuals"—a power not specifically identified in subsection (a)—permitting such impositions on a person's physical movement only for diseases specified by Executive Order. *Id.* § 264(b). Subsections (c) and (d) set further limits on the detention of individuals. *See id.* § 264(c)-(d). The final subsection provides that the statute and any regulation adopted thereunder supersede state law "to the extent that such a provision conflicts with an exercise of Federal authority." *Id.* § 264(e).

The Secretary has promulgated several regulations implementing these provisions and delegating their enforcement to CDC. *See* 42 C.F.R. pt. 70; *Control of Communicable Diseases, Apprehension and Detention of Persons With Specific Diseases, Transfer of Regulations*, 65 Fed. Reg. 49,906, 49,907 (Aug. 16, 2000). A regulation now codified at 42 C.F.R. § 70.2 provides the CDC with broad discretion to address the uncontrolled spread of communicable disease. Specifically, if the CDC Director "determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases" between or among states, he is empowered to "take such measures to prevent such spread of the diseases as he/she deems reasonably

necessary." 42 C.F.R. § 70.2.  These measures include, but are not limited to, "inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection." *Id.*  In addition, separate longstanding regulations provide that "[w]henever the Director has reason to believe that any arriving carrier . . . is or may be infected . . . with a communicable disease, he/she may require detention, disinfection, . . . or other related measures respecting the carrier or article or thing as he/she considers necessary to prevent the introduction, transmission, or spread of communicable diseases." 42 C.F.R. § 71.32(b); *see also id.* § 71.31(b) (allowing "detention of a carrier until the completion of the measures outlined in this part that are necessary to prevent the introduction or spread of a communicable disease").  And other regulations authorize CDC to limit interstate travel of infected persons, *see id.* § 70.3, to apprehend and detain persons, *id.* § 70.6, and to conduct medical examinations, *id.* § 70.12, to control the spread of disease.

## II.  The COVID-19 Pandemic

The respiratory disease COVID-19 is caused by the novel coronavirus SARS-CoV-2.  *See* Ex. 2, CDC, *Requirement for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery From COVID-19 for all Airline or Other Aircraft Passengers Arriving Into the United States From Any Foreign Country*, 86 Fed. Reg. 69,256, 69,258 (Dec. 7, 2021).  COVID-19 poses a risk of "severe" respiratory illness, meaning that infected persons may require hospitalization, intensive care, or the use of a ventilator. *Id.* at 69,259.  Severe cases may be fatal.  *Id.*  The virus that causes COVID-19 spreads in several ways, including when an individual "[b]reath[es] in air when close to an

infected person." CDC, *How COVID 19 Spreads* (updated July 14, 2021), https://perma.cc/R38B-WAPL. Persons not displaying symptoms are capable of transmitting the virus. 86 Fed. Reg. at 69,258. As of the date of this filing, the virus has infected more than 79 million and killed more than 972,000 people in the United States alone, and many more around the world. *See* CDC, COVID Data Tracker, https://perma.cc/BH8K-HHSG (Mar. 25, 2022). Mask wearing "is one of the most effective strategies available for reducing COVID-19 transmission." Ex. 1, CDC, *Order Under Section 361 of the Public Health Service Act, Requirement for Persons To Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025, 8026 (Feb. 3, 2021).

## III.   The Challenged Orders

### a.   The CDC's Transportation Mask Order

The CDC issued the transportation mask order on February 3, 2021. *See id.* Generally, the order requires persons to "wear masks over the mouth and nose when traveling on any conveyance . . . into or within the United States" and "at transportation hubs." *Id.* at 8026.[2]

The order exempts "child[ren] under the age of 2," and anyone "with a disability who cannot wear a mask, or cannot safely wear a mask," among others. *Id.* at 8027. It also exempts (among other things) "[p]rivate conveyances operated solely

---

[2] On March 10, 2022, CDC announced that, in advance of April 18, 2022, it will work with government agencies to inform a revised policy framework for when, and under what circumstances, masks should be required in the public transportation corridor.

for personal, non-commercial use." *Id.* at 8028.  And it does not apply "[w]hile eating, drinking, or taking medication, for brief periods."  *Id.* at 8027.[3]

### b.    The CDC's International Traveler Testing Order

On January 13, 2021, "[b]ased on increased transmissibility and spread of . . . new variants of SARS-CoV-2 and to reduce introduction and spread of these and future SARS-CoV-2 variants into the United States," the CDC issued an order generally requiring air travelers to provide proof of a negative COVID-19 test before departure to the United States.  *See* ECF No. 125-8 at 5.  Subsequently, on January 26, 2021, the testing order was reissued with minor modifications.  *See* ECF No. 125-9.

In December 2021, the CDC issued a further amended testing order, which Plaintiff challenges in his amended complaint.   *See* Ex. 2, 86 Fed. Reg. 69,256. Overall, the justification for this testing requirement is simple: "requiring passengers to demonstrate pre-departure either a negative COVID-19 test result or recovery from COVID-19 after previous SARS-CoV-2 infection in the past 90 days is necessary to reduce the risk of transmission of the SARS-CoV-2 virus, including the Omicron variant and other virus variants, and to protect the health of fellow passengers, aircraft crew, and U.S. communities."  *Id.* at 69,260.

---

[3] The Transportation Security Administration (TSA) has also issued a series of Security Directives, through which TSA assists with the enforcement of the CDC's mask order.  *See generally Corbett v. TSA*, 19 F.4th 478 (D.C. Cir. 2021) (holding that TSA Security Directives requiring masks in public-transportation systems are lawful); *see also id.* at 490 (Henderson, J., dissenting) (dissenting on the basis that plaintiff lacked standing, but also noting that, "[o]n the merits, this petition for review is a slam dunk loser").  TSA is no longer a party to this case.

IV. <u>**This Lawsuit**</u>

Plaintiff filed this lawsuit on June 7, 2021.  ECF No. 1.  After myriad filings—including multiple unsuccessful attempts by Plaintiff to seek injunctive relief from this Court, the Eleventh Circuit, and the Supreme Court—on December 18, 2021, Judge Byron issued an order, ECF No. 187, which adopted in substantial part Magistrate Judge Irick's October 7, 2021 Report & Recommendation, ECF No. 155.  The result was that the complaint was dismissed in its entirety, but the Court granted Plaintiff leave to replead certain claims against certain defendants.

On December 26, 2021, Plaintiff filed an amended complaint.  ECF No. 188. Plaintiff's amended complaint brings twelve claims challenging the CDC's transportation mask order and testing order.  Plaintiff alleges that the CDC's mask order violates (1) statutory limitations on the agency's authority, Am. Compl. ¶¶ 304-08; (2) the procedural requirements of the APA, *id.* ¶¶ 309-18; (3) the substantive requirements of the APA, *id.* ¶¶ 319-30; (4) the non-delegation doctrine, *id.* ¶¶ 331-39; (5) the Tenth Amendment, *id.* ¶¶ 340-48; (6) the Fifth Amendment, *id.* ¶¶ 349-57; (7) the right to travel, *id.* ¶¶ 358-66; and (8) the Air Carrier Access Act, *id.* ¶¶ 367-81; Plaintiff further alleges that the CDC's testing order violates (9) statutory limitations on the agency's authority, *id.* ¶¶ 382-86; (10) the procedural requirements of the APA, *id.* ¶¶ 387-96; (11) the substantive requirements of the APA, *id.* ¶¶ 397-403; and (12) the non-delegation doctrine, *id.* ¶¶ 404-12.  In his Motion for Summary Judgment (Mot.), filed on February 16, 2022, ECF No. 230, Plaintiff seeks summary judgment against

Federal Defendants on all twelve claims against them, and sweeping relief including a "[w]orldwide vacatur" of the mask order and testing order, *id.* at 35.

### ARGUMENT

Mr. Wall believes that "face masks are totally ineffective in reducing coronavirus spread but are harmful to human health in at least 68 ways." Am. Compl. at 3. But a large and growing body of scientific data says otherwise, which is why the CDC issued an order that—temporarily, and with various exceptions, including for those who cannot safely wear a mask for legitimate medical reasons—generally requires masks for those traveling in our nation's public transportation systems. CDC was doing exactly what Congress authorized it to do: to take actions that "in [its] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases" in the United States. 42 U.S.C. § 264(a). And because CDC "reasonably considered the relevant issues and reasonably explained the decision[,]" *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021), this Court should decline Mr. Wall's invitation to substitute its (or his) judgment for that of the agency. The same is true with respect to the international traveler testing order.

**I.   The Transportation Mask Order is authorized by the Public Health Service Act (PHSA) (Count 1).**

**1.** Congress authorized the CDC to adopt "such regulations as in [its] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions [of the United States], or from one State or possession into any other State or possession." 42 U.S.C. § 264(a).

In doing so, CDC "may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in [its] judgment may be necessary." *Id.* Whatever the outer bounds of this authority, it plainly includes, at an absolute minimum, "sanitation" measures, or "other measures" akin to "sanitation" measures. *Id.*

Masking is a conventional "sanitation" measure. A leading modern dictionary defines "sanitation" as "the act or process of making sanitary" or "the promotion of hygiene and prevention of disease by maintenance of sanitary conditions." Sanitation, *Merriam-Webster.com Dictionary*, https://perma.cc/9ARR-YKYH. Dictionaries from the 1940s, published shortly before and after enactment of the PHSA, define the term similarly, or even more broadly.[4] Those dictionary definitions are all consistent with plain meaning and common usage—much like other "sanitation" measures, such as wearing gloves or a gown, or disinfecting surfaces, wearing a mask is intended to reduce the transmission of viral particles.

Even if there were doubt on this score, the temporary requirement to wear masks on public transportation is a comparable (or milder) imposition than the other

---

[4] *See, e.g.*, Ex. 3, FUNK & WAGNALLS NEW STANDARD DICTIONARY OF THE ENGLISH LANGUAGE 2172 (Isaac K. Funk et al. eds., 1946) (defining "sanitation" as "[t]he devising and applying of measures for preserving and promoting public health; the removal or neutralization of elements injurious to health; the practical application of sanitary science"); Ex. 4, WEBSTER'S NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE 2214 (William Allan Neilson et al., 2d ed. 1942) (defining "sanitation" as the "use of sanitary measures," and defining "sanitary" as "[o]f or pert[aining] to health; for or relating to the preservation or restoration of health; occupied with measures or equipment for improving conditions that influence health; free from, or effective in preventing or checking, agencies injurious to health, esp[ecially] filth and infection; hygienic").

examples enumerated in the statute, such as "inspection," "fumigation," "disinfection," "pest extermination," and "destruction." 42 U.S.C. § 264(a). It thus qualifies, at minimum, as an "other measure[]" that CDC has determined "may be necessary" "in [its] judgment," within the meaning of the second sentence of 42 U.S.C. § 264(a). For this additional reason, the transportation mask order is unambiguously within CDC's statutory authority.

**2.** It is not clear that Plaintiff disputes that masking qualifies as "sanitation," or is at least sufficiently similar to "sanitation." Instead, he argues that "the statute directs that any 'sanitation' be directed at 'animals or articles,' not human faces." Mot. at 6. Not so. The plain text of 42 U.S.C. § 264(a) makes clear that the phrase "of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings" refers only to the measure immediately preceding it, "destruction"—not to the five other listed measures, including "sanitation." If each of those five measures were limited to "animals or articles," one would expect to see the word "or" before "destruction" (not the word "and" before "other measures"). *Id.* And Plaintiff's reading leads to several implausible results: *e.g.*, that CDC can order "inspection," but only of items already "found to be so infected."

**3.** The Supreme Court's decision in *Alabama Association of Realtors v. HHS*, 141 S. Ct. 2485 (2021) ("*AAR*"), holding that the CDC's eviction moratorium was likely unlawful, is no help to Plaintiff. The Court in no way suggested that the PHSA only authorizes actions directed at "animals or articles," even though that would also have been dispositive in that case. To be sure, *AAR* does clarify that the second sentence of

42 U.S.C. § 264(a) at least "informs the grant of authority" in the first, "by illustrating the kinds of measures that could be necessary."  141 S. Ct. at 2488.  But if anything, that confirms that the text at least authorizes "sanitation" measures, along with other "kinds of measures" like sanitation measures.  *Id.*; *see also id.* (the listed measures "directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself").  And whatever could be said about the CDC's eviction moratorium, there is nothing indirect about the mask order—a mask is literally a physical barrier that "directly" reduces viral transmission in real time.

In addition, *Chevron* deference applies here.  So even if the Court concludes that the "statute is ambiguous," the only remaining question is whether the "agency's construction is reasonable."  *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005).  Here, for all the reasons above, it is.[5]

**4.**   Plaintiff relies heavily on the Supreme Court's stay of a vaccine-or-test requirement in *NFIB v. OSHA*, 142 S. Ct. 661 (2022), suggesting that the case stands for the simple proposition that any "significant Executive Branch pandemic mandate" is necessarily unlawful.  Mot. at 2-3 (also citing other miscellaneous COVID-related orders from other courts).  But that faulty reading ignores that on the same day that the Court granted a stay in *NFIB*, it also stayed an injunction *against* a vaccine

---

[5] Plaintiff's reference to the statutory title "Part G—Quarantine and Inspection," Mot. at 4, is unhelpful to him.  There is nothing about that generic title (which covers not just the section at issue in this case, but all of 42 U.S.C. §§ 264-72) that is inconsistent with the operative statutory text in § 264(a).  Regardless, "[t]he title of a statute . . . cannot limit the plain meaning of the text."  *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (quoting *Bhd. of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528-29 (1947)).

requirement for healthcare workers challenged in another case, allowing the requirement to take effect. *See Biden v. Missouri*, 142 S. Ct. 647 (2022). In any event, both cases were statutory-interpretation cases about entirely different statutes and involving wholly different COVID-19 mitigation measures—and thus neither should have any bearing on this Court's interpretation of the Public Health Service Act.[6]

## II.   Plaintiffs' non-delegation claims are meritless (Counts 4 & 12).

Even if Plaintiff's one-sentence references to the non-delegation doctrine, *see* Mot. at 11, 32, sufficed to preserve such claims, those claims are plainly meritless. So long as Congress provides "an intelligible principle to which" the agency "is directed to conform, such legislative action is not a forbidden delegation of legislative power." *J. W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928). This is not a high bar. Indeed, Plaintiff ignores 80 years of Supreme Court precedent upholding broader and less specific delegations, including one to "protect the public health." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 475-76 (2001). In light of this, it is abundantly clear that the PHSA is not an unconstitutional delegation of legislative power. Moreover, *AAR* states that the scope of 42 U.S.C. § 264(a) is at least "inform[ed]" by the statute's list of six specific measures. 141 S. Ct. at 2488. That plainly resolves any arguable non-delegation problem.

---

[6] Citing no authority, Plaintiff also argues that the authority to issue "regulations" cannot be understood to include "[o]rders." Mot. at 4. But an "agency must be equipped to act either by general rule or by individual order," and "[t]o insist upon one form of action to the exclusion of the other is to exalt form over necessity." *SEC v. Chenery Corp.*, 332 U.S. 194, 202 (1947). In any event, the statute authorizes CDC to make "and enforce" regulations, and the mask order and the testing order were both issued pursuant to authority delegated from HHS to CDC in regulations, consistent with 42 U.S.C. § 264(a). *See* 42 C.F.R. §§ 70.2, 71.31(b), 71.32(b).

III.   **The Transportation Mask Order is not arbitrary and capricious (Count 3).**

Arbitrary-and-capricious review under the APA is "exceedingly deferential." *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008) (citation omitted). Courts may not "substitute [their] judgment for the agency's as long as its conclusions are rational." *Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009). Instead, "[a] court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Prometheus Radio Project*, 141 S. Ct. at 1158. The Eleventh Circuit "give[s] an extreme degree of deference to the agency when it is evaluating scientific data within its technical expertise." *Nat'l Mining Ass'n v. Dep't of Labor*, 812 F.3d 843, 866 (11th Cir. 2016) (citation omitted).

**1.** Plaintiff's claim is largely premised on his own contrarian view of the scientific evidence: that "masks are ineffective and harmful." Mot. at 14. But the CDC has amply supported its determination that mask wearing "is one of the most effective strategies available for reducing COVID-19 transmission." 86 Fed. Reg. at 8026. And the CDC has "reasonably explained," *Prometheus Radio Project*, 141 S. Ct. at 1158, that masks both (1) "help prevent people who have COVID-19, including those who are pre-symptomatic or asymptomatic, from spreading the virus to others[,]" and (2) "also provide personal protection to the wearer by reducing inhalation of" "virus-laden droplets," 86 Fed. Reg. at 8028. Under bedrock principles

of administrative law, that is more than enough—even if there were room for reasonable scientists to disagree.[7]

Moreover, CDC's judgment aligns with the widespread medical consensus at the time the mask order was promulgated (as well as today) that masks work effectively to slow the spread of COVID-19. *See* 86 Fed. Reg. at 8028 ("Seven studies have confirmed the benefit of universal masking in community level analyses[.]"); *Dep't of Homeland Sec'y v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020) (judicial review is limited to "the grounds that the agency invoked when it took the action"). In fact, as courts around the country have recognized in the context of challenges to state and local mask mandates, "nearly every public health institution in the country has recommended mask-wearing as a means of slowing the virus's spread." *Zinman v. Nova Se. Univ., Inc.*, No. 21-cv-60723, 2021 WL 4025722, at *14 (S.D. Fla. Aug. 30, 2021).[8] Indeed, this Court has itself recognized that "there is substantial scientific

---

[7] Plaintiff asserts that Federal Defendants "failed to articulate . . . what specific state measures were inadequate," Mot. at 15, which appears to be a reference to 42 C.F.R. § 70.2, discussed earlier in Plaintiff's motion, Mot. at 8. That provision authorizes CDC to act when it "determines that the measures taken by health authorities of any State or possession . . . are insufficient to prevent the spread" of communicable disease between states. 42 C.F.R. § 70.2. But the CDC reasonably determined that "[a]ny state or territory without sufficient mask-wearing requirements for transportation systems within its jurisdiction has not taken adequate measures to prevent the spread of COVID-19 from such state or territory to any other state or territory[,]" carving out locales that "provide the same level of public health protection as—or greater protection than—the requirements listed herein." 86 Fed. Reg. at 8029-30.

[8] *See also, e.g.*, *Stewart v. Justice*, 518 F. Supp. 3d 911, 919 (S.D. W. Va. 2021) ("The Mask Mandate . . . furthers a compelling interest by slowing the spread of the coronavirus and saving lives."); *Oakes v. Collier Cnty.*, 515 F. Supp. 3d 1202, 1209 (M.D. Fla. 2021) ("It would be difficult to contend with a straight face that a mask requirement does not bear a rational relation to protecting people's health and preventing the spread of COVID-19."); *Miranda ex rel. M.M. v. Alexander*, No. 21-cv-535, 2021 WL 4352328, at *6 (M.D. La. Sept. 24, 2021) ("[A] nearly unanimous consensus of the public health community recommends the use of masks as a means of reducing the spread of the virus and protecting the mask wearer from it."); *United States v. James*, No. 19-cr-8019, 2020 WL 6081501, at *1 (D. Ariz. Oct. 15, 2020) ("studies and epidemiological models from leading experts . . . indicate that

14

evidence showing that masks are very effective in blocking aerosolized particles containing the COVID-19 virus and usually have no significant adverse health effects for the wearers." Order 9, *Wall v. Southwest Airlines*, No. 21-cv-1008, ECF No. 153 (M.D. Fla. Dec. 8, 2021).

Even accepting the (dubious) premise that there is significant uncertainty about either the efficacy or safety of mask wearing during a global pandemic of an airborne respiratory virus, the APA does not require unanimity or certainty in the scientific literature before an agency can act. *Cf. Prometheus Radio Project*, 141 S. Ct. at 1160 ("[T]he FCC did not have perfect empirical or statistical data. Far from it. But that is not unusual in day-to-day agency decisionmaking within the Executive Branch.").

Plaintiff also speculates (baselessly) that the order "is about politics, not public health." Mot. at 15. But even if that were true, "a court may not set aside an agency's policymaking decision solely because it might have been influenced by political considerations." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019).[9]

**2.** Plaintiffs further argues that the mask order violates the Food, Drug, & Cosmetic Act (FDCA) and two international treaties (the International Covenant on Civil & Political Rights (ICCPR) and the Convention on International Civil Aviation

---

the widespread use of masks safely and meaningfully reduces COVID-19 transmission, hospitalization, and death").

[9] Plaintiff argues that the number of TSA employees that have tested positive for COVID-19 "shows the policy doesn't stop infections." Mot. at 16. But case counts do not disprove the utility of masks, as they say nothing about how the numbers would look in the absence of masking. Plaintiff also asserts that airplanes have "high-efficiency filters," *id.* at 17, but the mask order applies throughout the public transportation system, and even accepting that airplanes contain such air filters, it is also the case that "[a]ir travel often requires spending time in security lines and crowded airport terminals" and "[s]ocial distancing may be difficult if not impossible on flights." 86 Fed. Reg. at 8029.

(CICA)).  Mot. at 17-21.  These arguments represent an attempt by Plaintiff to shoehorn new claims into his amended complaint, despite the Court explicitly stating that leave to replead was "not an opportunity to add new claims," ECF No. 187 at 28, and Plaintiff's consequent agreement not to make such claims, *see* Ex. 5, Dec. 24, 2021 Email from L. Wall to S. Pezzi.  Therefore, the Court should disregard those arguments.[10]  But even to the extent that the Court considers them, they are meritless.

Plaintiff argues that the mask order violates the FDCA by "forc[ing] Americans to use a medical device (face masks), most of which are approved" by the FDA "under Emergency Use Authorization ('EUA') or not authorized at all."  Mot. at 17.  In reality, the order says nothing about requiring the use of a mask that is authorized under an EUA.  Instead, it simply requires "material covering the nose and mouth of the wearer, excluding face shields."  86 Fed. Reg. at 8027 & n.6.  The order further explains that a mask "should be a solid piece of material without slits, exhalation valves, or punctures," and that compliant masks include—but are not limited to—"[m]edical masks and N-95 respirators."  *Id.* at 8027 n.6.  In other words, individuals may use (1) a mask that is FDA-cleared (like an N-95 respirator), (2) a mask that is authorized under an EUA (like certain disposable surgical masks), or (3) a mask that is not cleared, approved, or authorized by the FDA at all—as long as it properly "cover[s] the nose and mouth."  *Id.* at 8027.  So, if Mr. Wall has concerns about wearing a mask authorized under an EUA, he can select another mask that is not.

---

[10] For the same reason, the Court should also disregard Plaintiff's arguments that the testing order violates the FDCA.  *See* Mot. at 35.

16

In any event, the statutory provision on which Plaintiff relies does not place *substantive* limits on requiring use of a product subject to an EUA; it merely allows the agency to establish conditions that are "necessary or appropriate to protect the public health," including to ensure "that individuals to whom the product is administered" have certain *information*, such as about "the option to accept or refuse administration of the product" and "of the consequences, if any, of refusing administration of the product." 21 U.S.C. § 360bbb-3(e)(1)(A). In other words, the statute explicitly contemplates that there may be "consequences" from refusal. *Cf. Bridges v. Hous. Methodist Hosp.*, 543 F. Supp. 3d 525, 528 (S.D. Tex. 2021) ("Bridges can freely choose to accept or refuse a COVID-19 vaccine [subject to an EUA]; however, if she refuses, she will simply need to work somewhere else.").[11]

Meanwhile, Plaintiff provides no basis for his assertion (with no further elaboration) that the mask order violates provisions of the ICCPR and CICA. But even if it did, such provisions would not create legal obligations that could be enforced in federal court.[12] *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004) (the ICCPR does not "create obligations enforceable in the federal courts"); *Medellin v. Texas*, 552 U.S. 491, 504-05 (2008) (explaining that treaties are "ordinarily" not self-executing).[13]

---

[11] For this same reason, Plaintiff's assertion that the testing order violates the FDCA, Mot. at 35, is also meritless.

[12] Plaintiff invokes 49 U.S.C. § 40105(b)(1)(A), Mot. at 21, but that statute is inapplicable here, among other reasons because it governs how "the Secretary of Transportation and the Administrator [of the Federal Aviation Administration]," neither of whom is a defendant in this suit, carries out certain statutory provisions of federal aviation law.

[13] Plaintiff also briefly asserts that the testing order "violates international law," citing a discussion in his amended complaint about the ICCPR. Mot. at 34. This too appears to be an attempt

**IV.**   **The CDC had good cause to issue the Transportation Mask Order without notice and comment (Count 2).**

Notice and comment are not required "when the agency for good cause finds" that those procedures "are impracticable" or "contrary to the public interest." 5 U.S.C. § 553(b)(B).  CDC explicitly made that finding here.  *See* 86 Fed. Reg. at 8030.  If the good-cause exception does not apply to temporary public-health measures to protect our transportation systems during a pandemic that has already killed over 972,000 Americans, it is hard to imagine when it would.

In response, Plaintiff suggests that CDC cannot invoke the good-cause exception because "COVID-19 began in December 2019 and was declared a global pandemic in March 2020," and CDC "can't self-create an 'emergency' 10½ months into a declared pandemic."  Mot. at 12-13.  But the Supreme Court recently rejected a virtually identical argument, holding that the government appropriately invoked the good-cause exception in a COVID-related rule issued in November of 2021.  *See Biden v. Missouri*, 142 S. Ct. at 654 (agency may "forgo notice and comment" for a vaccination requirement intended to "reduce COVID-19 infections, hospitalizations, and deaths" among healthcare workers).

In the alternative, any notice-and-comment error was harmless.  The APA provides that "due account shall be taken of the rule of prejudicial error," 5 U.S.C. § 706, which is like "an administrative law harmless error rule," *Little Sisters of the Poor*

---

by Plaintiff to raise a new claim that he explicitly agreed not to make, *see* Ex. 5, which the Court should disregard, but in any event the claim is meritless for the same reasons.

18

*Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2385 (2020) (alteration and citation omitted).  Where, as here, "the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand." *PDK Labs., Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004).  Plaintiff fails to explain how any of his comments, focused principally on the supposed ineffectiveness of masks, would have changed the outcome, given the emergency that CDC was (and is) facing in responding to COVID-19 and the substantial evidence that masks work.

## V.   The Transportation Mask Order does not violate the Constitution (Counts 5-7).

**1.**   Plaintiff argues that the federal government "can't overrule mask laws" enacted by the States, Mot. at 23, but the Supremacy Clause allows exactly that, U.S. Const. art. VI, cl. 2, including via regulation, *see Wyeth v. Levine*, 555 U.S. 555, 576 (2009).

**2.**   Plaintiff contends that, because the mask order applies to state-operated transportation hubs, it "commandeer[s]" some state employees in violation of the Tenth Amendment. Mot. at 23.  But the order is generally applicable to all public and private mass transportation systems.  It does not *exempt* state employees, but that is not a Tenth Amendment problem: "[t]he anticommandeering doctrine does not apply when" the government "evenhandedly regulates an activity in which both States and private actors engage." *Murphy v. NCAA*, 138 S. Ct. 1461, 1478 (2018).

**3.**   Plaintiff's due process claim is also meritless.  There is no constitutionally protected liberty interest in, for example, "being able to breathe without the

obstruction caused by a face mask," Am. Compl. ¶ 354—and certainly not while on a commercial airline flight during a global pandemic of an airborne respiratory virus. And allowing private companies to assist with *implementation* of a regulatory order (as compared with delegating *policymaking authority* to a private actor) is neither unusual nor unlawful. *See Cospito v. Heckler*, 742 F.2d 72, 87 n.25 (3d Cir. 1984) (citing *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 537 (1935)). Finally, Plaintiff's statement that "[i]t is futile to demand exemptions from the airlines," Mot. at 24, is demonstrably untrue. For instance, one of his associates flew with an exemption just last month. *See* Notice of Flight, *Andreadakis v. CDC*, No. 22-cv-52-DJN, ECF No. 33 (E.D. Va. Feb. 15, 2022) ("[O]n February 14, 2022 the Plaintiff flew from Richmond, Virginia to Redding, California . . . and was not required to wear a facemask.").

**4.** Plaintiff's right-to-travel claim also fails because both "the freedom to travel interstate" and "the freedom to travel abroad" are "subject to reasonable government regulation." *Abdi v. Wray*, 942 F.3d 1019, 1030 (10th Cir. 2019) (quoting *Haig v. Agee*, 453 U.S. 280, 306 (1981)). "[M]ere burdens on a person's ability to travel from state to state are not necessarily a violation of their right to travel." *Doe v. Moore*, 410 F.3d 1337, 1348 (11th Cir. 2005); *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) ("[M]inor restrictions on travel simply do not amount to the denial of a fundamental right."). And the Eleventh Circuit has squarely held that merely alleging that "it is inconvenient to travel" in light of some otherwise reasonable government regulation is not enough. *Moore*, 410 F.3d at 1348. Here, even setting aside the fact

20

that "[t]he Mask Rules do not prevent [Plaintiff] from engaging in interstate travel," *Forbes v. Cnty. of San Diego*, No. 20-cv-00998, 2021 WL 843175, at *7 (S.D. Cal. Mar. 4, 2021), the challenged order is plainly reasonable.  That is enough.[14]

## VI.   The Transportation Mask Order is consistent with the Air Carrier Access Act (ACAA) (Count 8).

Plaintiff's claim that the Transportation Mask Order violates the ACAA is meritless (among other reasons) because while the ACAA prohibits an "air carrier" from "discriminat[ing] against handicapped individuals," CDC is not an "air carrier." 49 U.S.C. § 41705(a).  In any event, neither the mask order nor airlines implementing it "discriminate against" passengers on the basis of a disability.  To the contrary: the order explicitly *exempts* any "person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability."  86 Fed. Reg. at 8027.  If it is true that Plaintiff is a "person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability," *id.*, then the CDC's order does not even apply to him.

## VII.   To the extent Plaintiff makes non-duplicative claims with respect to the International Traveler Testing Order, they are also meritless (Counts 9-12).

Plaintiff's claims challenging the testing order are also meritless—and he barely offers any arguments to the contrary, other than incorporating by reference his arguments challenging the mask order.  Plaintiff's duplicative claims and arguments

---

[14] Plaintiff's assertion (accompanied by no citation to a right-to-travel case) that courts "consistently appl[y] strict scrutiny to restrictions on the right to interstate and international travel," Mot. at 27, is incorrect.  *See, e.g.*, *Elhady v. Kable*, 993 F.3d 208, 221 (4th Cir. 2021); *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 535 (6th Cir. 2007).

challenging the testing order fail for the same reasons that his challenges to the mask order fail, *see supra* at 8-21, but Federal Defendants briefly address his few testing-specific arguments.

**1.** Plaintiff asserts that the testing order exceeds CDC's statutory authority under the PHSA. Mot. at 30-32. But the second sentence of 42 U.S.C. § 264(a) plainly authorizes the testing requirement, particularly given the explicit reference to "inspection." Indeed, Plaintiff does not even contest that the testing requirement qualifies as an "inspection" measure (or an "other measure" akin to an "inspection" measure). Rather, Plaintiff argues that "[e]ven if the statute did authorize testing as 'inspection,' it would only be allowed for 'arriving passengers,' not those air travelers departing foreign nations." Mot. at 31 (citing 42 C.F.R. § 71.32(b)). Plaintiff identifies no such limitation in the statute itself. But, regardless, all "air travelers departing foreign nations" for the United States are "arriving passengers." *Id.* And Plaintiff identifies no legal prohibition on requiring pre-flight (instead of post-flight) testing—even ignoring the obvious practical downsides.

**2.** For similar reasons that the mask order did not have to go through the APA's notice-and-comment process, *see supra* at 18, neither did the testing order, in which the CDC similarly made an explicit finding that the good cause exception applied because

"notice-and-comment rulemaking would defeat the purpose of the Amended Order and endanger the public health."[15]  *See* 86 Fed. Reg. at 69,260.[16]

**3.**  Plaintiff's arbitrary-and-capricious challenge to the testing order fails because CDC "reasonably considered the relevant issues and reasonably explained the decision," which is all that the APA requires.  *Prometheus Radio Project*, 141 S. Ct. at 1158.  The agency's justification was straightforward: the testing order "is necessary to reduce the risk of transmission of the SARS-CoV-2 virus, including the Omicron variant and other virus variants, and to protect the health of fellow passengers, aircraft crew, and U.S. communities."  86 Fed. Reg. at 69,260.  Plaintiff points to nothing to question this judgment.

Plaintiff nevertheless argues that the testing order is arbitrary and capricious because, "[i]f masks are effective in stopping COVID-19 transmission . . . then there's no need for a testing requirement because everyone flying muzzled would not spread

---

[15] The testing order was also exempt from the APA's notice-and-comment requirements for an additional, independent reason: 5 U.S.C. § 553(a)(1)'s explicit textual exception for agency actions that "involve[] . . . a military or foreign affairs function of the United States."  The *international* traveler testing order applies only in the context of *international* travel to the United States, and indeed it operates almost exclusively overseas, given the requirement for a "pre-departure" negative test.  86 Fed. Reg. at 69,257.  It is thus "linked intimately with the Government's overall political agenda concerning relations with []other countr[ies]."  *Am. Ass'n of Exps. & Imps. Textile & Apparel Grp. v. United States*, 751 F.2d 1239, 1249 (Fed. Cir. 1985).  It thus (at least) "involve[s]" a "foreign affairs function of the United States," 5 U.S.C. § 553(a)(1), and is therefore exempt from notice and comment.

[16] As with the mask order, even if there was some notice-and-comment obligation, any error was harmless, and Plaintiff has not carried his burden to show otherwise.  *See supra* at 18-19.  Plaintiff argues that public comments "would have revealed" that the testing order would "not stop [the Omicron variant] from entering America," noting that the vast majority of new infections are caused by the Omicron variant.  Mot. at 33.  But the percent of infections caused by a specific variant does not tell us anything about how high the number of infections might have been or how quickly that variant might have been introduced without the testing order.  And, in the testing order, the CDC acknowledged that "pre-departure testing does not eliminate all risk" but rather is part of a "multi-layered proactive approach" to both "prevent[] and slow[]" the "introduction of cases and further spread of the virus within U.S. communities."  86 Fed. Reg. at 69,260.

23

the virus." Mot. at 33. This argument ignores (among other things) that (1) taking precautions (including multiple overlapping precautions) may be prudent even in the absence of 100% effectiveness; and (2) infected individuals traveling from abroad may "spread[] the virus to others during travel, upon arrival in the United States, and at their destinations" after they land. ECF No. 125-9 at 4.[17]

## VIII.  **Plaintiff's requested relief is overbroad.**

An Article III court's "constitutionally prescribed role is to vindicate the individual rights of the people appearing before it." *Gill v. Whitford*, 138 S. Ct. 1916, 1930, 1933 (2018). Accordingly, as required both by Article III of the Constitution and traditional principles of equity, "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *id.* at 1934, and "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *see also Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 393-94 (4th Cir. 2001) ("language of the APA" does not require courts to invalidate a rule "for the entire country"). Nationwide relief, by contrast,

---

[17] Plaintiff complains that "illegal aliens" are not required to test, Mot. at 33, but does not explain how there could be a testing regime for *illegal* entry. And while Plaintiff notes that the testing order does not apply to those "crossing land borders" and "arriving by sea," Mot. at 34, an agency "need not solve every problem before it in the same proceeding," *Mobil Oil Exploration & Producing Southeast, Inc. v. United Distribution Cos.*, 498 U.S. 211, 231 (1991), so there is nothing impermissible about the agency aiming to slow the spread of COVID-19 in the United States by addressing the substantial percentage of international travelers that arrive in the country by air—often on long, densely-packed flights. In any event, CDC has also issued separate orders and guidance regarding other forms of international travel. *See, e.g.*, CDC, *Cruise Ship Travel During COVID-19* (updated March 14, 2022), https://perma.cc/A4PR-QDEL (recommending individuals get a COVID-19 test "as close to time of cruise departure as possible (no more than 3 days) **before** you travel").

"take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch." *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring).  And the orders at issue have been challenged in numerous other cases—some involving Plaintiff himself—underscoring why this Court should not attempt to decide their legality for all parties nationwide.  *See Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 601 (2020) (Gorsuch, J., concurring) (lamenting the "gamesmanship and chaos" created by the possibility of "conflicting nationwide injunctions," as well as the "asymmetric" effects in which "the government's hope of implementing any new policy could face the long odds of a straight sweep, parlaying a 94-to-0 win in the district courts into a 12-to-0 victory in the courts of appeal").  Accordingly, although all of Plaintiff's claims are meritless, at most, any relief should be limited to him.  *See, e.g.*, Order, *Wall v. TSA*, No. 21-1220 (D.C. Cir. Nov. 10, 2021) ("petitioners have not demonstrated any basis for enjoining the challenged agency action in its entirety").[18]

## <u>CONCLUSION</u>

Federal Defendants' motion for summary judgment should be granted, and Plaintiff's motion for summary judgment should be denied.

---

[18] Relatedly, should the Court determine that CDC committed procedural errors under the APA (such as by failing to engage in notice and comment or by failing to adequately explain its reasoning), the Court should at most remand to the agency *without* vacatur.  *See Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1289-90 (11th Cir. 2015).  The alleged procedural errors that Plaintiff relies on could all be cured on remand, and even temporary (or partial) vacatur of these orders could have disruptive and dangerous consequences.

Dated: March 25, 2022                    Respectfully submitted,


                                         BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney General

                                         ROGER B. HANDBERG
                                         United States Attorney

                                         ERIC B. BECKENHAUER
                                         Assistant Branch Director

                         By:     */s/ Andrew F. Freidah*
                                         MARCIA K. SOWLES
                                           Senior Trial Counsel
                                         STEPHEN M. PEZZI
                                         ANDREW F. FREIDAH
                                         JOHNNY H. WALKER
                                         MICHAEL J. GERARDI
                                           Trial Attorneys
                                         United States Department of Justice
                                         Civil Division
                                         Federal Programs Branch
                                         1100 L Street NW
                                         Washington, DC 20005
                                         Telephone: 202-305-0879
                                         Email: andrew.f.freidah@usdoj.gov

                                         *Counsel for the Federal Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 25, 2022, I caused a true and correct copy of the as-filed version of this filing to be served on all counsel of record via the CM/ECF system.  Although Plaintiff is proceeding *pro se*, he has been authorized by the Court to receive Notices of Electronic Filing from the CM/ECF system. ECF No. 14. Accordingly, Plaintiff will receive service of this filing through the CM/ECF system.

*/s/ Andrew F. Freidah*
ANDREW F. FREIDAH
Trial Attorney
United States Department of Justice
