# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

LUCAS WALL,        :

   Plaintiff,        :

             :   Case No. 6:21-cv-975-PGB-DCI

v.            :

             :   District Judge Paul Byron

CENTERS FOR DISEASE     :   Magistrate Judge Daniel Irick
CONTROL & PREVENTION *et al.*,   :

             :

   Defendants.       :

## PLAINTIFF'S COMBINED[1] OPPOSITION TO [263] CROSS-MOTION FOR SUMMARY JUDGMENT & REPLY IN SUPPORT OF [230] MOTION FOR SUMMARY JUDGMENT AGAINST CDC & HHS

COMES NOW plaintiff, *pro se*, and opposes the Federal Defendants' Cross-Motion for Summary Judgment (Doc. 263) and replies to its opposition (*Id.*) to my Motion for Summary Judgment Against Defendants CDC & HHS (Doc. 230). The government has offered no reason why summary judgment should not be granted in my favor on Counts 1-12 of the Amended Complaint. Nor has it demonstrated that the Centers for Disease Control & Prevention ("CDC") or its parent agency, the Department of Health & Human Services ("HHS"), are entitled to summary judgment. The Court should vacate and enjoin worldwide both the Federal Transportation Mask Mandate ("FTMM") and the International Traveler Testing Requirement ("ITTR").

---

[1] Local Rule 3.01 permits up to 20 pages for an opposition brief and up to seven pages for a reply in support of a motion for summary injunction. For judicial economy, I present my opposition and reply together, not to exceed a combined 27 pages.

## I. STATEMENT OF FACTS

The government makes numerous false factual allegations that I must rebut:

1. "The COVID-19 global pandemic poses one of the greatest threats to the operational viability of the transportation system and the lives of those on it seen in decades." Doc. 263 at 1. In reality, there is no such threat, as the travel industry acknowledges in urging the Biden Administration since last summer to abolish the FTMM and ITTR. Docs. 219, 251, & 265-267.

2. The FTMM and ITTR are not "temporary orders." Doc. 263 at 1 & 9. They require masking and testing forever. The FTMM "will remain in effect unless modified or rescinded..." Doc. 263-1 at 7. If ever voluntarily repealed, there's a real threat that CDC and HHS could reimplement the mandates at any time unless stopped by this Court. Ex. 1.[2]

3. CDC's COVID-19 statistics are wrong and should not be used to inflame the Court. The virus has infected way "more than 79 million" Americans. *Id.* at 5. A recent examination of blood samples led CDC to estimate that "well over double" the number of Americans who have tested positive for COVID-19 have actually had the virus – close to one-half of the nation's population. Ex. 2.

4. COVID has NOT "killed more than 972,000 people in the United States..." Doc. 263 at 5. CDC reports those who have died *with* COVID-19, regardless of what the actual *cause* of death was. Its death stats are often erroneous and have to be cor-

---

[2] This threat illustrates why, should CDC and HHS voluntarily repeal the FTMM and/or ITTR prior to this Court's ability to decide summary judgment, such an action would not moot this case.

rected. CDC can't even get its own data straight, reporting 816,851 deaths of Americans with COVID-19 on the same webpage it claims there have been 977,495 fatalities. Exs. 3-5. A close look at the data show CDC counts "All Deaths involving COVID-19," defined in Footnote 1 as "Deaths with confirmed or presumed COVID-19," regardless of actual cause.[3] CDC has admitted that only 5-10% of recorded coronavirus fatalities had COVID-19 listed as the sole cause of death.[4] The Court must not allow the government's fear-mongering by considering statistics that greatly overestimate COVID-19's mortality rate.

5. The government offers no evidence to support its claim that "Mask wearing 'is one of the most effective strategies for reducing COVID-19 transmission.'" Doc. 263 at 5. The science indicates otherwise. https://bit.ly/masksarebad. So do the travel industry and the nation's largest business organization. Doc. 251-1.

6. My description of the science is not a "contrarian position." Doc. 263 at 1. Nor is it "my" view. *Id.* at 8. It is informed by my reading of more than 200 studies and articles showing that masks are totally ineffective in reducing COVID-19 transmission but harm our health in dozens of ways. Take a look at all the documents I compiled contradicting CDC's stance (not a single one of which I authored). https://bit.ly/masksarebad. Dr. Leana Wen, one of the nation's most forceful and prominent mask advocates, conceded late last year that "Cloth masks are little more than facial decorations. There's no place for them in light of omicron." Ex.

---

[3] https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm (visited April 1, 2022)

[4] https://www.medicalnewstoday.com/articles/how-are-covid-19-deaths-counted-and-what-does-this-mean (published March 11, 2022)

6. Many others who previously believed in mask efficacy, including a former Food & Drug Administration ("FDA") chief, have come to the same conclusion. Ex. 7.

7. New studies, articles, and expert testimony come out each month adding to the "large and growing body of scientific data" illustrating that masks have not stopped the spread of COVID-19 but are harmful to human health. For some recent examples, *see* Exs. 8-11.

## II. ARGUMENT

### A. The Public Health Service Act and its regulations do not give CDC and HHS authority to require masking or testing.

The government wrongly argues that the Public Health Service Act ("PHSA") and its underlying regulations support the FTMM and ITTR because they provide CDC with "broad discretion to address the uncontrolled spread of communicable disease." Doc. 263 at 3. Not true. The statute and regs provide CDC defined, limited powers that don't include forced masking or virus testing.

The first rule cited only permits the CDC director to act when she "determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases from such State or possession to any other State or possession..." 42 CFR § 70.2. The mere assertion that masks are the only valid measure is inadequate. *Florida v. Becerra*, 544 F. Supp. 3rd 1241, 1293 (M.D. Fla. 2021). CDC may not rely "on only a conclusory and dubious but self-serving generalization that non-federal measures are inherently insufficient to protect public health and safety." *Id.*

Furthermore, this rule – like the statute, 42 USC § 264(a) – permits the CDC director to take actions "including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection." Human faces are not "animals or articles" and masks and testing do not fall under any of the enumerated actions targeted at things "believed to be sources of infection" since the mandates apply to all travelers, 99+% whom are COVID-free.

Next, the government admits that 42 CFR § 71.32(b) applies only to "any arriving carrier." Doc. 263 at 4. This regulation gives CDC no authority to impose a mask mandate on any mode of transport except, perhaps, those "arriving" into a United States port of entry from abroad. Furthermore, this regulation applies only to "any ... article or thing on board the carrier..." 42 CFR § 71.32(b). A human face, the target of the mask mandate, is not a transportation "carrier," and is likewise not an "article or thing on board the carrier." Nor is a human nose, the target of the ITTR.

The FTMM and ITTR can't be justified by 42 CFR § 71.31(b). Doc. 263 at 4. This regulation only applies to actions taken "Upon *arrival* at a U.S. port..." 42 CFR § 71.31(a) (emphasis added). "[C]ourts *must* overturn agency actions which do not *scrupulously* follow the regulations and procedures promulgated by the agency itself." *Sierra Club v. Martin*, 168 F.3rd 1, 4 (11th Cir. 1999) (emphases added).

None of the statutes or regulations the government cites authorize CDC to make or enforce regulations that amount to a blanket preventative measure against people who *might* be carrying an infectious disease. Such a broad reading of the statute would be "tantamount to creating a general federal police power." *Skyworks v. CDC*,

524 F. Supp. 3rd 745, 758 (N.D. Ohio March 10, 2021). The Constitution does not provide the federal government with such a power. *Bond v. United States*, 572 U.S. 844, 854 (2014).

Every court that has addressed the question has found that § 264(a) pertains to animals, articles, or property, not people. *See*, e.g., *Tiger Lily v. HUD*, 992 F.3rd 518, 522 (6th Cir. 2021). This Court has already concluded that § 264(a) "allows the regulation of only an infected or infecting item." *Florida v. Becerra*.

Other regulations cited by the government to justify the FTMM and ITTR do no such thing. CDC and HHS admit these regulations only "authorize CDC to limit interstate travel of *infected persons*..." Doc. 263 at 4 (emphasis added). But the FTMM and ITTR apply to *all* travelers, not those who are actually disease vectors.

> "A person who *has a communicable disease* in the communicable period shall not travel from one State or possession to another without a permit from the health officer of the State, possession, or locality of destination, if such permit is required under the law applicable to the place of destination." 42 CFR § 70.3 (emphasis added).

This doesn't grant CDC any authority; it applies only to permits issued by state health officers. And it only impacts a person who "has" a disease.

The fifth regulation the government cites is likewise of no help because it applies only if "The individual is *reasonably believed to be infected* with a quarantinable communicable disease..." 42 CFR § 70.6. But the mask mandate and testing requirement apply to every single traveler, and the president has not designated COVID-19 as a "quarantinable communicable disease." Although a regulation does permit the CDC director to "require an individual to undergo a medical examination

as part of a Federal order for quarantine, isolation, or conditional release for a quarantinable communicable disease," that rule only kicks in *after* an order is issued pursuant to § 70.6 when there's evidence to believe someone is infected. 42 CFR § 70.12.

Finally, the government's attempt to get around the statute's authorization for the agencies only to make *regulations*, not issue *orders*, by stating "the statute authorizes CDC to make 'and enforce' regulations" fails. Doc. 263 at 12, FN 6. Since none of the regulations cited authorize the mask mandate or testing requirement, these two mandates have no legal basis upon which to stand.

## B. Masking is not a sanitation measure or in any way similar.

CDC and HHS state "It is not clear that Plaintiff disputes that masking qualifies as 'sanitation,' or is at least sufficiently similar to 'sanitation.'" Doc. 263 at 10. I completely dispute these absurd attempts to stretch the law to the agencies' desires. The contention that forced masking of human faces is a "conventional sanitation measure," or anything akin to "sanitation," is laughable. *Id.* at 9. No person has ever said, for instance, "I'm going to sanitize my face by putting on a mask."

The government quotes various dictionary definitions of "sanitation," but none support forced masking as falling under that term. Placing a mask over one's nose and mouth in no way makes a person "sanitary," since masking does not promote hygiene or disease prevention (https://bit.ly/masksarebad). Oxford Dictionary defines sanitation as "Conditions relating to public health, especially the provision of

clean drinking water and adequate sewage disposal."[5] Merriam-Webster's full definition, conveniently excluded by the government, is "the promotion of hygiene and prevention of disease by maintenance of sanitary conditions (***as by removal of sewage and trash***)."[6] "Sanitary" is defined as "of, relating to, or used in the disposal especially of domestic waterborne waste."[7]

These definitions comport with our common understanding that "sanitation" refers to *things*, not human faces, i.e. water, garbage, sewage, etc. It also conforms with the language of the statute. 42 USC § 264(a) applies only to "animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings." § 264(a) only allows CDC to impose specific restrictions on *property* interests. But the FTMM and ITTR are restrictions on travelers' *liberty* interests, which is an issue addressed by § 264(d). *See Tiger Lily* at 522. "Sanitation" is the power for CDC "to sanitize and dispose of infected matter..." *Id.* at 523.

CDC's *post hoc* argument that "sanitation" includes masking human faces is defied by its own definitions regarding transportation and disease. A "sanitary inspection" of carriers arriving at a U.S. port includes "determin[ing] whether there exists rodent, insect, or other vermin infestation, contaminated food or water, or other insanitary conditions..." 42 USC § 71.41. CDC itself defines sanitation as "having access to facilities for the safe disposal of human waste (feces and urine), as well as having the abil-

---

[5] https://www.lexico.com/definition/sanitation (visited March 7, 2022)
[6] https://www.merriam-webster.com/dictionary/sanitation (visited March 7, 2022) (emphasis added)
[7] https://www.merriam-webster.com/dictionary/sanitary (visited March 7, 2022)

ity to maintain hygienic conditions through services such as garbage collection, industrial/hazardous waste management, and wastewater treatment and disposal."[8]

The FTMM indisputably is not a "sanitation" measure. CDC and HHS' argument to the contrary "suggests a ruse, a mere contrivance, superficially attempting to justify a sweeping, invasive, and unprecedented public health requirement imposed unilaterally by President Biden." *Florida v. Nelson*, No. 8:21-cv-2524 (M.D. Fla. Dec. 22, 2021) (enjoining vaccine mandate for federal contractors).

42 USC § 264(d) permits the government to take action, including apprehension and examination (such as testing) only against "any individual ***reasonably believed to be infected*** with a communicable disease," not against all travelers. § 264(a) authorizes only "discrete actions" such as banning a particular infected item, detaining a ship, or taking other similar actions "distinctly limited in time, scope, and subject matter." *Florida v. Becerra*.

The World Health Organization ("WHO") defines sanitation as providing clean water and proper disposal of urine and feces. It aims to provide nations with sanitation info to "help decide how to invest in providing toilets and ensuring safe management of wastewater and excreta."[9] And nowhere in the FTMM order itself do the Federal Defendants define a face covering as a "sanitation" measure. In fact, the words "sanitation" and "sanitary" do not appear in the FTMM. Doc. 263-1.

The government's 1940s dictionaries fare no better in defining "sanitation" as including the covering of human faces. The 1946 edition of Funk & Wagnalls defines

---

[8] https://www.cdc.gov/healthywater/global/sanitation/index.html (visited April 1, 2022)
[9] https://www.who.int/news-room/fact-sheets/detail/sanitation (visited March 7, 2022)

"sanitary" as "A public water-closet or urinal, especially once equipped with sanitary features." Doc. 263-3. Notably that dictionary includes a diagram regarding "Providing Sanitation for a Modern House," describing the use of clean water, pipes, toilets, sinks, bathtubs, and discharges to sewers. *Id.*

Webster's 1942 dictionary likewise terms "sanitary" as "A water closet, urinal, or the like, fitted with sanitary plumbing" and "sanitary engineering" as "That branch of civil engineering dealing with the water supply, sewage, and waste disposal for cities..." Doc. 263-4. These definitions are reflected in common English language use. We don't visit a sanitation facility to buy a mask or get tested for COVID; we only go there if we want to take in some really terrible smells of poop and pee being processed.

Nobody but the government's lawyers believes that "sanitation" includes "wearing gloves or a gown," just like it doesn't include masking. Doc. 263 at 9. Gloves and gowns don't "sanitize" anything. A mask is NOT "a physical barrier that 'directly' reduces viral transmission in real time." Doc. 263 at 11. A mask simply redirects respiratory droplets out the top, bottom, and sides of the wearer's face — or in the case of most masks, directly through the material since our respiratory droplets are much smaller than most cloth or other materials used to craft masks.

CDC and HHS have not pointed to a single instance in which they have likened products such as masks, gloves, and gowns to "sanitation." Nothing in the administrative record refers to masking as a "sanitation" measure. Docs. 114-118.

The government's attempt to steer around the minefield of *Alabama Ass'n of Realtors v. HHS*, 141 S.Ct. 2485 (2021), claiming the case is of "no help to Plaintiff"

(Doc. 263 at 10), is clumsy. The Supreme Court expressly rejected CDC's reading of §
264(a). It held that actions must "directly relate to preventing the interstate spread
of disease by identifying, isolating, and destroying the disease itself." The FTMM ap-
plies to intrastate travel, including taking a public bus one mile. And masks do not
identify, isolate, or destroy COVID-19.

I have not argued that "any 'significant Executive Branch pandemic mandate' is
necessarily unlawful." Doc. 263 at 11. Of course each must be evaluated based on the
issuing agency's statutory and constitutional authority.[10] That said, courts have con-
cluded in nearly every COVID-19 case similar to this one that

> "the record in this action presents only a threadbare and conclusory rationali-
> zation that is incommensurate with the boundless expansiveness of the execu-
> tive order's application, with the invasiveness of the executive order's require-
> ment, and with the intrusion of the executive order into a state prerogative
> with which even Congress likely cannot interfere..." *Florida v. Nelson.*

## C. CDC and HHS are not entitled to *Chevron* deference.

The government asserts "*Chevron* deference applies here." Doc. 263 at 11. Not
true. CDC and HHS' assertion that § 264(a) authorizes the regulation of human be-
ings is foreclosed by multiple decisions finding that the section only applies to ani-
mals, articles, infected or infecting items, or other disease-carrying things. As this
Court recently held, *Chevron* deference "is not due unless a court, employing tradi-
tional tools of statutory construction, is left with an unresolved ambiguity." *Turner*

---

[10] Several interpretive canons counsel in favor of reading § 264(a) not to authorize the mask and
testing mandates including the major questions doctrine, the federalism canon, *noscitur a sociis,*
*ejusdem generis,* the rule against surplusage, and constitutional avoidance. *See Alabama Ass'n of
Realtors; Canton Police Benevolent Ass'n of Canton v. United States,* 844 F.2d 1231, 1236 (6th Cir.
1988); *Parker v. Metro. Life Ins. Co.,* 121 F.3d 1006, 1014 (6th Cir. 1997).

*v. Bristol*, 2021 U.S. Dist. LEXIS 178062 at *21 (M.D. Fla. Sept. 20, 2021). The scope of § 264(a) is not ambiguous. Masks and testing are not "sanitation," "inspection," nor any other measure enumerated on 42 USC § 264(a).

The PHSA codified a limited regulatory power that is tightly focused and binary in nature: to either act on animals and objects under § 264(a) or to quarantine infected persons under §§ 264(b)-(d). It contains no authority to govern the behavior of the traveling public and workers such as mandating masks and virus testing.

An agency may not be afforded *Chevron* deference under the major questions doc-trine. CDC admits in the FTMM that it is a "major rule" having a substantial impact on the U.S. economy.[11] For an "agency to exercise regulatory authority over a major policy question of great economic and political importance, Congress must ... ex-pressly and specifically delegate to the agency the authority both to decide the major policy question..." *Paul v. United States*, 140 S.Ct. 342 (2019). Only Congress may decide whether masks and virus testing are needed to combat COVID-19. It has de-termined they are not.[12] "It is telling that, since the pandemic began, Congress has passed no legislation mandating vaccination despite enacting several other signifi-cant pandemic-related measures." *Brnovich v. Biden*, No. 21-cv-1568 (D. Ariz. Jan. 27, 2022) (enjoining vaccine mandate for federal contractors). Although Congress

---

[11] Millions of Americans such as myself have not used public transportation in more than a year due exclusively to the mask mandate and testing requirement, causing "devastating" harm to the travel industry. Docs. 219, 251, & 265-267. The FTMM acknowledges that "This order is also an economi-cally significant regulatory action..." Doc. 263-1 at 7.

[12] Several bills have been introduced in Congress to require masking and COVID-19 testing in the transportation sector. None have passed out of committee in either chamber. The only floor vote regarding these two subjects occurred March 15, 2022, when the Senate approved 57-40 Senate Joint Resolution 37 to repeal the FTMM. Ex. 12.

*might* have authority to compel masking and virus testing in the transport industry, "there is no indication that it intended to do so..." *Brnovich*, citing *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172 (2001). Even if the Court determines there is some ambiguity in the PHSA regarding whether masks are "sanitation" and virus testing in a foreign nation is "inspection" upon arrival at a U.S. port, there is no legitimate argument that 42 USC § 264(a) presents "a clear indication that Congress intended that result" nor – in considering the FTMM – that the Legislative Branch authorized the Executive Branch's "federal encroachment upon a traditional state power." *Solid Waste Agency*.

CDC is also not allowed deference because the FTMM and ITTR violate other federal statutes – e.g. the Air Carrier Access Act (FTMM) and Food, Drug, & Cosmetic Act (both) – that are administered by other agencies (the Department of Transportation and FDA, respectively).

> "*Chevron* deference does not apply when an agency interprets a statute 'in a way that limits the work of a second statute' that a different agency administers. *Epic Systems*, 138 S. Ct. at 1629. Here, the CDC administers [42 USC] § 265, but the Department of Homeland Security administers § 1158, as well as the two types of relief under § 1231..." *Huisha-Huisha v. Mayorkas*, No. 21-5200 (D.C. Cir. March 4, 2022) (partially enjoining CDC's Migrant Expulsion Order due to COVID-19).

## D. The FTMM and ITTR are arbitrary and capricious.

The Federal Defendants attempt to justify the FTMM and ITTR by describing them as "rational" and that they "reasonably considered the relevant issues and reasonably explained the decision." Doc. 263 at 13. False. CDC and HHS waited 10+ months to issue the orders after the WHO declared COVID-19 a global pandemic.

CDC data indicate that as of March 31, 95% of U.S. counties – including all 67 Florida counties[13] – have a low level of COVID-19 infection. Ex. 13. In all these locations, CDC has advised since Feb. 25, 2022, to "Wear a mask based on your personal preference..." Only in 17 counties (0.53%) does CDC recommend that everyone "Wear a well-fitting mask indoors in public..."[14] Yet the FTMM requires masks be worn by everyone on all forms of public transportation in every single county despite 99.47% of them not being at high risk for coronavirus infection. This is the utter definition of arbitrary and capricious.

> "[T]he extent of any ... problem, past or future, attributable to COVID-19 is undemonstrated and is merely a hastily manufactured but unproven hypothesis about recent history and a contrived speculation about the future. Obviously, no massive extension and expansion of presidential power is necessary to cure a non-existent problem... the executive order results in an application of dizzying expansiveness." *Florida v. Nelson.*

A court must "not defer to the agency's conclusory or unsupported suppositions." *Texas v. Biden*, 10 F.4th 538, 555 (5th Cir. 2021). But in a conclusory fashion, the FTMM asserts that "[a]ppropriately worn masks reduce the spread of COVID-19..." But the mandate does not acknowledge, much less discuss, hundreds of studies reaching different conclusions. https://bit.ly/maskarebad. CDC's own data shows no evidence that the FTMM (or ITTR) have done anything to reduce COVID spread.

"On the other side of the scales is the Executive's questionable claim that

---

[13] Notably the chief judge terminated the Middle District of Florida's courthouse mask mandate just 10 days after the CDC issued its updated "no mask" guidance for nearly all of the nation, prompted by my Feb. 9 motions to intervene and vacate. Doc. 223. "Masks are no longer required to be worn by visitors or employees in Middle District of Florida courthouses." *In re Restrictions on Courthouse Access Due to COVID-19*, No. 3:20-mc-23 (March 7, 2022).

[14] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/about-face-coverings.html (visited March 31, 2022)

> COVID-19's spread is slowed in a meaningful way by the CDC's § 265 Order...
> But this is March 2022, not March 2020. The CDC's § 265 order looks in cer-
> tain respects like a relic from an era with no vaccines, scarce testing, few ther-
> apeutics, and little certainty. ... The evidence of the difference between then
> and now is considerable. ... We cannot blindly defer to the CDC in these cir-
> cumstances." *Huisha-Huisha*.

"Plaintiff also speculates (baselessly) that the order is 'about politics, but public health.'" Doc. 263 at 15. But the facts leave no room for reasonable debate. President Biden issued E.O. 13998 one day after he was inaugurated. Just 11 days later, CDC issued the FTMM *solely* because of political considerations since President Biden made it one of his major campaign promises, even though admitting it would likely be deemed unconstitutional. What triggered the mask mandate? Not any scientific research or pandemic developments, but the executive order of a president who took office *the day before he signed it*. If the FTMM were truly based in science, CDC and HHS had 10½ months to issue a Notice of Proposed Rulemaking, solicit public comment, respond to those comments, and then publish in the Federal Register a Notice of Final Rulemaking. The fact the FTMM was rushed into effect without public notice and comment due to the order of a new president demonstrates how it was not based in science or any health need, but purely on political considerations.

The government asserts that a court must "give an extreme degree of deference to the agency when it is evaluating scientific data within its technical expertise." Doc. 263 at 13. But that doesn't apply here because CDC and HHS put the FTMM into place because of the president's political desires, not any finding the agencies made regarding scientific data. The administrative record shows that CDC and HHS did not consider a single one of the 228 scientific studies, medical articles, and videos I have

compiled. https://bit.ly/masksarebad. Nor the hundreds of others that have been published but are not in this collection. Masks have totally failed to contain COVID-19, as is obvious by the multiple massive surges that have occurred globally every few months regardless of whether countries/states had masking rules in place or not.

CDC has not "reasonably considered the relevant issues and reasonably explained the decision." Doc. 263 at 8. It has absolutely not "supported its determination that mask wearing 'is one of the most effective strategies for reducing COVID-19 transmission'" nor has it "reasonably explained" why the FTMM is necessary, aside from fulfilling President Biden's campaign promise.

CDC failed to consider lesser alternatives. *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913-14 (2020). Rather than a universal mask mandate, CDC (if it has any statutory authority to require masks, which it does not) should have considered which types of transportation most likely contribute to interstate spread. Instead, the Federal Defendants treat small-city bus systems and interstate flights on jumbo jets as if they present the same risk of spreading COVID-19 across state lines. The FTMM doesn't explain CDC's failure to issue a mask mandate for the first 10½ months of the pandemic. Recently CDC exempted school buses from the FTMM without saying why only that mode was eliminated. Ex. 18.

There is certainly no "widespread medical consensus ... that masks work effectively to slow the spread of COVID-19." Doc. 263 at 14. Seven flawed studies relied on by CDC certainly do not demonstrate a "widespread medical consensus." Likewise

16

this Court's prior holding, citing no authority, that "there is substantial scientific evidence showing that masks are very effective in blocking aerosolized particles containing the COVID-19 virus and usually have no significant adverse health effects for the wearers" (*Id.* at 14-15) is clearly erroneous. https://bit.ly/masksarebad.

Responding the likelihood that two-thirds of Transportation Security Administration employees have been infected with COVID-19, the government claims its own statistics "say nothing about how the number would look in the absence of masking." Doc. 263 at 15, FN 9. It would be tough for TSA's infection rate to be any higher than what it is *with nearly two years*[15] *of forced masking of all staff*.

The FTMM and ITTR are squarely at odds with § 264(a)'s express purpose, which is "to ***prevent*** the introduction, transmission, or spread of communicable diseases." Given the massive number of COVID-19 infections since the two orders took effect, CDC can't seriously claim that either of these policies has done anything to prevent the spread of COVID-19 in the transport sector. For example, during the latest coronavirus "surge" a few months ago, tens of thousands of flights were canceled because an enormous number of airline employees – who must always wear masks (and undergo virus testing on international routes) – were getting infected. Ex. 14.

The government then complains that several of my arguments regarding why the FTMM is arbitrary and capricious "represent an attempt by Plaintiff to shoehorn new claims into his amended complaint, despite the Court explicitly stating that leave to

---

[15] TSA began muzzling its workers long before the FTMM took effect Feb. 1, 2021.

repead was 'not an opportunity to add new claims.'" Doc. 263 at 16. But part of determining whether an agency order is arbitrary or capricious involves reviewing if it violates laws, regulations, and/or treaties. My pointing out which ones the FTMM and ITTR run afoul of does not add claims; it buttresses my arguments.

The government's interpretation of the Food, Drug, & Cosmetic Act ("FDCA") is wrong. CDC and HHS make an absurd statement that "if Mr. Wall has concerns about wearing a mask authorized under an EUA, he can select another mask that is not." Doc. 263 at 16. It's astounding that after nearly 10 months of litigation this case, CDC and HHS aren't able to comprehend that *I medically can't wear any type of mask. See* doctor's note, Doc. 188 at Ex. 19, and health records, *Id.* at Exs. 12-18.

CDC and HHS deceitfully claim that the FTMM "says nothing about requiring the use of a mask that is authorized under an EUA." Doc. 263 at 16. But they fail to note that all masks provided by their partner agency, TSA, and airlines to passengers are those only approved by FDA for emergency use.

The government's argument that the FDCA only requires that Americans be given "information" about refusing administration of an EUA medical device is truly non-sensical. There would be no reason for Congress to require someone be provided information that they may refuse use of an EUA product if they may not actually refuse use of the product. The law allows the government to provide Americans with its beliefs about what health "consequences" there might be from refusal (e.g. CDC's dubious claim that someone who doesn't wear a mask might be at greater risk of contracting COVID-19), but it clearly does not permit the government to impose *penalties*

such as the denial of the constitutional right to travel and statutory right to use the public airspace if someone uses their ability to refuse use of an EUA medical device. Courts have rejected the Federal Defendants' interpretation of the FDCA. *See Doe v. Rumsfeld*, 297 F. Supp. 2nd 119 (D.D.C. 2003); 341 F. Supp. 2nd 1 (D.D.C. 2004).

### E. Good cause does not excuse the lack of notice and comment.

CDC and HHS had 10½ months to put the FTMM through Administrative Procedure Act ("APA")-required notice and comment from March 11, 2020, to Feb. 1, 2021. "Good cause cannot arise as a result of the agency's own delay..." *NRDC v. NHTSA*, 894 F.3d 95, 114 (2nd Cir. 2018). "[C]ertainly neither 'good cause' nor 'urgent and compelling circumstances' exists to justify summary disregard of the requirements of administrative law and rulemaking." *Florida v. Nelson*.

And these agencies have now had 14 more months since the so-called "emergency" order went into effect, but have never even solicited comments yet alone considered them. The APA requires notice of, and comment on, agency rules that "affect individual rights and obligations." *Chrysler Corp. v. Brown*, 441 U.S. 281, 303 (1979). These procedures are congressionally mandated "to assure due deliberation" when an agency promulgates rules having the force of law. *Smiley v. Citibank*, 517 U.S. 735, 741 (1996).

The Federal Defendants cite *Biden v. Missouri*, 142 S.Ct. 647 (2022), to justify the lack of notice and comment. But that decision sheds no light on the challenges I've raised to the FTMM and ITTR. CDC's three brief conclusory mentions of its "good cause" findings in the FTMM present nothing close to the four pages described in

detail in the interim healthcare worker vaccination rule.

Moreover, it is one thing to invoke good cause on an interim order while the agency conducts notice and comment. It is another to rely on good cause indefinitely, as CDC and HHS have done here. *Cf. Biden v. Missouri* (accepting the agency's good-cause finding where it issued an *interim* rule while *immediately commencing* notice and comment on a proposed final rule). Also, the agency issuing the interim healthcare worker mandate acted soon after FDA licensed the first fully approved COVID vaccine Aug. 23, 2021. It did not delay nearly a year like CDC did in declaring "good cause" to issue the FTMM and ITTR without notice and comment only days after a new president ordered them for political reasons.

Failure to provide notice and comment was not "harmless." Doc. 263 at 18. When an agency utterly fails to allow public feedback, "even a minimal showing of prejudice may suffice to defeat a claim of harmless error." *Mid Continent Nail Corp. v. United States*, 846 F.3rd 1364, 1383 (Fed. Cir. 2017). Courts "should be hesitant to conclude that complete failure to comply with § 553's requirements is harmless." *United States v. Reynolds*, 710 F.3rd 498, 518 (3rd Cir. 2013).

I'm hardly the only one harmed by lack of notice and comment. The travel industry has spoken loudly that the mask mandate, testing requirement, and other Executive Branch travel restrictions have resulted in "devastating" consequences including a 50% drop in business travel and a 78% drop in foreign travel. Doc. 251-1. *See also* other industry letters demanding immediate abolition of the FTMM and ITTR. Docs.

219 & 265-267. The agency's failure to take public comment certainly affected its decisionmaking and the outcome.

## F. The FTMM violates the Constitution.

**1. 10th AMENDMENT:** CDC and HHS argue that by issuing an order without legal authority, they may override the no-mask policies of all 50 states. Doc. 263 at 19; *see* Ex. 15. They cite the Supremacy Clause, but the 10th Amendment actually controls here because public health and intrastate transportation are domains of the states, not the federal government. As 21 states argued earlier this week to the Tampa division of this Court, the FTMM

> "harms Plaintiffs' sovereign interests. Many Plaintiffs have laws or policies prohibiting or discouraging mask requirements in contexts where the mask mandate applies. ... the mask mandate harms the Plaintiffs' quasi-sovereign interests in the health, safety, and welfare of their citizens. Forced masking ... causes a variety of negative health consequences, including psychological harms, reduced oxygenation, reduced sanitation, and delayed speech development." Complaint, *Florida v. Walensky*, No. 8:22-cv-718 (M.D. Fla.).

Insofar as the FTMM does not exceed Congress's authority under the Commerce Clause, it at a minimum fails the statute's interstate requirement. *Cf. United States v. Lopez*, 514 U.S. 549 (1995) (discussing a lack of congressional findings regarding the effect on interstate commerce). The history of the PHSA shows that "the public health power" is still understood as "a function of state police power." *Florida v. Becerra*. The federal government may only assist the states, not override all 50 of their no-mask laws and policies. Ex. 15. The FTMM

> "intrudes into an area traditionally and principally reserved to the states. ... The federal government is one of limited, enumerated powers. ... This principle is implicit in both the structure and text of the Constitution and was made ex-

press by the 10th Amendment. ... [States have the] power to prohibit vaccina-
tion from being compelled. Consistent with that authority, Arizona has enacted
laws prohibiting State and local government entities from imposing vaccine
mandates." *Brnovich.*

Likewise, Florida and at least 13 other states forbid mandatory masking, and not a single state requires face coverings. Ex. 15. "Where the federal government seeks to preempt state law in an area that the States have traditionally occupied, there is a strong presumption that the historic police powers of the States are not to be superseded by Federal Act unless that is the clear and manifest purpose of Congress." *Brnovich* (cleaned up), citing *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). "A power not delegated [to the federal government] includes the state's police power, which 'is defined as the authority to provide for the public health, safety, and morals' of the state's population." *Florida v. Nelson*, quoting *Barnes v. Glen Theatre*, 501 U.S. 560, 569 (1991).

Even if masks and pre-departing virus testing were effective at reducing COVID-19 spread,

> "People, for reasons of their own, often fail to do things that would be good for them or good for society. Those failures – joined with the similar failures of others – can readily have a substantial effect on interstate commerce. Under the Government's logic, that authorizes Congress to use its commerce power to compel citizens to act as the Government would have them act. That is not the country the Framers of our Constitution envisioned." *NFIB v. Sebelius*, 567 U.S. 519, 554 (2012).

And here the Court reviews not an act of Congress, but orders of executive agencies, which must be given even less weight when reviewing encroachment on powers the 10th Amendment reserves to the states and to the people.

**2. FIFTH AMENDMENT:** The FTMM does not "allow[] private companies to

assist with *implementation* of a regulatory order," it delegates all *"policymaking authority* to a private actor." Doc. 263 at 20 (emphases original). It delegates the entire medical-exemption decisionmaking process to private corporations. When airlines refuse to grant me a medical waiver, I have no recourse to appeal to CDC, HHS, or TSA. The private company's decision is final, violating my Fifth Amendment right to due process.

The government cites one example of one person in the entire nation who was granted a mask exemption by one airline to argue that requesting exemptions is not futile. Doc. 263 at 20. But my numerous exemption denials – and those of tens of thousands of other Americans – show otherwise.

> "Although the Air Force claims to provide a religious accommodation process, it proved to be nothing more than a quixotic quest for Plaintiff because it was 'by all accounts, … theater.' … Like every other religious-based request and appeal filtering its way through the Air Force's accommodation process, it was, save for the nine approved in the last two weeks, rubber-stamped with disapproval and denial. … With such a marked record disfavoring … accommodation requests, the Court easily finds that the Air Force's process to protect … rights is both illusory and insincere." *Air Force Officer v. Austin*, No. 5:22-cv-9 (M.D. Ga. Feb. 15, 2022) (noting the Air Force has rejected 99.76% of accommodation requests).

**3. RIGHT TO TRAVEL:** Banning me from flying interstate and internationally because I medically can't wear a mask is not a "reasonable government regulation," a "mere burden," nor a "minor restriction" on my constitutional right to freedom of movement. Doc. 263 at 20. I have been unable to fly home – or anywhere else – for the past 10 months due exclusively to the FTMM. Since the mask mandate applies to all forms of transportation except driving your own car and I do not own an automo-

bile, my right to travel has been stripped away solely because I can't obstruct my oxygen intake

Even if I owned an automobile, the government does not get to control what mode of transport I use to travel among the states and internationally. I have a right to use the public airspace. 49 USC § 40103. Notably it's impossible to drive a car across the Atlantic Ocean to care for my younger brother in Germany. The government doesn't control when citizens may travel or for what purpose. This right is reserved to the people by the Constitution. *United States v. Guest*, 383 U.S. 745, 757 (1966). Courts are "tasked with upholding the Constitution and redressing fundamental rights because – no matter how dire the crisis – constitutional protections remain commandments, not suggestions. ... just because COVID-19 continues to linger, that is not an invitation to 'slacken ... enforcement of constitutional liberties.'" *Air Force Officer*.

## G. The FTMM only exempts people with disabilities in theory.

The government disingenuously argues that the FTMM "explicitly *exempts* any 'person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability'" and that "the CDC's order does not even apply to [me]" as a person with a disability. Doc. 263 at 21 (emphasis original). This is nonsense. All of my numerous mask-exemption requests to several airlines were refused.

Although CDC is not an air carrier, it can't violate provisions of federal law enacted by Congress (unlike the FTMM, which never was) that protect the disabled from discrimination. CDC's order allows airlines to violate numerous federal regulations prohibiting discrimination against the disabled.

24

## H. The International Traveler Testing Requirement is unlawful.

The second sentence of 42 USC § 264(a) does not authorize a COVID-19 testing requirement to re-enter my own country of citizenship because it is not "inspection" of property such as "animals or articles." Doc. 263 at 22. Testing  all human flyers to the USA for a virus does not comport with the plain language. Notably the Federal Defendants have never dictated virus testing even during outbreaks of Ebola, SARS, and other diseases many times more lethal than COVID-19.

I have indeed identified legal prohibitions on requiring pre-flight testing. Doc. 263 at 22. Since all COVID-19 tests are issued for emergency use only,[16] and most virus tests administered abroad aren't FDA controlled at all, I have the right to refuse administration of any testing product. 21 USC § 360bbb-3(e)(1)(A).

Providing notice and accepting comments would not have "endanger[ed] the public health" as the government clams. Doc. 263 at 23. It's undisputed that the Delta and Omicron variants of COVID-19 came to the United States and spread rapidly despite the ITTR (and FTMM). The testing requirement, like the mask mandate, have not stopped or even reduced COVID-19 transmission. Notably the reason for the latest version of the ITTR was to stop Omicron from entering the USA but within only a couple weeks of the order's implementation, the variant accounted for 99% of cases

---

[16] The government offers no evidence that any COVID-19 test is approved by FDA. Out of curiosity, I ordered free rapid tests made available by the federal government. Not only do these tests not qualify under the ITTR because they aren't processed by a healthcare provider who verifies the identity of the person using it, they are also clearly marked on the front of the box "For use under an Emergency Use Authorization only." Ex. 16. The back of the box states "This product has not been FDA cleared or approved, but has been authorized by FDA under an EUA." Id.

in the United States. The agencies have provided no evidence that the ITTR "reduce[d] the risk of transmission ... including the Omicron variant ... to protect the health of fellow passengers, aircraft crew, and U.S. communities." Doc. 263 at 23. HHS admits rapid tests aren't even that effective at detecting Omicron. Ex. 17.

The government's argument that the ITTR is exempt from notice and comment because it involves a "foreign affairs function of the United States" is ridiculous. Doc. 263 at 23, FN 15. The testing requirement is in no way linked with the United States' agenda concerning relations with other countries. It doesn't involve the assistance of any foreign government. CDC and HHS then oddly try to compare their *recommendations* that cruiseships passengers test for COVID-19 with the *requirement* that air passengers must do so. *Id.* at 24, FN 17.

## I. My request for relief is not overbroad.

The government falsely states that the APA "does not require courts to invalidate a rule 'for the entire country.'" Doc. 263 at 24. Not so. The plain text of the act states a court must "hold unlawful and set aside agency action" that is "not in accordance with law." 5 USC § 706(2). There is no option to set aside agency action for one person. If the FTMM and/or ITTR are held to be *ultra vires*, the Court must vacate them, meaning the Federal Defendants can't enforce them worldwide on anyone. This was the result of the Supreme Court decisions doing away with CDC's Eviction Moratorium and OSHA's Vaccine-or-Mask/Test Mandate.

Worldwide *vacatur* and a permanent injunction banning CDC and HHS from ever

reissuing mask and testing orders are needed because these are the only ways to guarantee the Federal Defendants don't again engage in this unlawful and unconstitutional conduct. Universal injunctions against agency actions are appropriate when "the public interest would be ill-served .... by requiring simultaneous litigation of this narrow question of law in countless jurisdictions." *Chicago v. Sessions*, 888 F.3rd 272, 292 (7th Cir. 2018). Constitutional violations support a worldwide injunction. "[T]he executive's usurpation of the legislature's power ... implicates an interest that is fundamental to our government and essential to the protection against tyranny." *Chicago v. Barr*, 961 F.3d 882, 919 (7th Cir. 2020).

Congress did not envision a Court finding an agency action unlawful and then vacating it only for the one plaintiff in the case, forcing every other American affected by the illegal executive action to have to bring their own lawsuits. How would an order limited to me only even work? One can imagine the nightmare of me traveling around the nation and world trying to explain to every airline agent, bus driver, train conductor, TSA officer, etc. that the FTMM and ITTR don't apply to Lucas Wall. Whereas worldwide *vacatur* would leave no doubt that the policies are unenforceable.

The Court must ignore the government's inflammatory concluding remarks, made without any supporting evidence, that "even temporary (or partial) *vacatur* of these orders could have disruptive and dangerous consequences." Doc. 263 at 25, FN 18. "[R]ecently, the Supreme Court confirmed that 'our system does not permit agencies to act unlawfully even in pursuit of desirable ends.' *Alabama Ass'n of Realtors*...; *see also NFIB v. Dept. of Labor*, 142 S. Ct. 661, 666 (2022)." *Huisha-Huisha*.

Respectfully submitted this 1st day of April 2022.

Lucas Wall, plaintiff
3601 Cosmos Way
The Villages, FL 32163
Telephone: 202-351-1735
E-Mail: Lucas.Wall@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, I e-mailed this brief and 18 exhibits to defense counsel:

Stephen Pezzi
Stephen.Pezzi@usdoj.gov

David Wood
David.Wood@akerman.com

Sally Culley
sculley@rumberger.com

Lucas Wall, plaintiff